By the Court—Robertson, J.
In this case the Jury found for defendant, and upon the questions of the fall in the value of the cotton, so as to require a payment of part of the advance, as well as the notice to, or demand upon, the defendant’s agent, and his authority to receive it, and the evidence is sufficient to sustain such finding. But the graver question remains, whether the plaintiff was entitled to notice of the mode, time and place of sale.
Until the cotton was actually sold to repay the advances *328 upon it, the plaintiff had a right to redeem, it, and, when it was so sold, to use every means to have it bring the highest price, by diffusing knowledge of the sale, and procuring competitors for the purchase, unless he surrendered those rights by express contract. The necessity of judicial proceedings to warrant the sale of pledged property, which were at first required, arose from the indulgence of the law to the pawnor, so as to permit him to redeem the property at the last moment, before it was sold; or, if he could not, to use Ms efforts to have it bring the best price it could. His remaining interest or equity of redemption entitled him to that intervention, in the act of sale, which was to deprive him of it. A public sale was required to insure the benefit of competition, but notice of its time and place was also required. The law did not assume, merely by the sale being public, the property would necessarily bring the highest price, without the aid of the pawnor.
When mere notice of the sale was allowed by law, as a substitute for judicial proceedings, the right of the pawnor was still preserved, in his being entitled to notice of the time and place, so as to give him an opportunity to redeem or to procure purchasers. (Hart v. Ten Eyck, 2 Johns. Ch., 62 ; Opinion of Kent, J., Cortelyou v. Lansing, 2 Cai. Ca., 200; Garlick v. James, 12 Johns., 146; Stearns v. Marsh, 4 Den., 227, per Jewett, J.; Wheeler v. Newbould, 16 N. Y. R., 392; Marfield v. Goodhue, 3 Comst., 62; 2 Kent’s Com., 581, 583, [marg. paging,] 7; 1 Parsons on Cont., [marg. paging,] 621.) Any defect in the length of the time of notice or objection to the place of sale, may be waived, Willoughby v. Comstock, (3 Hill, 389,) otherwise reasonable notice must be given; and although a notice may be waived by contract, a demand must be made after the debt becomes due, before a sale can be made. (Wilson v. Little, 1 Sandf., 351; 2 Comst., 443.)
Of course all or any of the pawnor’s rights can be waived or modified by consent, including notice of the time and place of sale. There is, however, no express waiver of such notice in the case before us. But it is *329 claimed that it was waived impliedly and virtually, by the permission to sell at public or private sale, at the defendant’s option. This is undoubtedly so, if a private sale is incompatible with notice of the time and place of sale; in other words, whether giving notice of a private sale is impossible, or so highly impracticable as to defeat the object of the .sale, because that would substantially take away the right of election. There does not appear, in this case, to have been notice given of even an election to exercise the power to sell privately, instead of publicly, which is usual where a right of election exists. At all events, such evidence, if it existed, was withdrawn from, the consideration of the Jury. From all that happened, it does not appear that the plaintiff had any reason to know when or how the defendant’s testator intended to sell the cotton, or how much time he would have to make efforts to redeem or to procure purchasers. Virtually, from the time that the defendant’s testator gave notice that he intended to sell, the property became his, so far as any right of the plaintiff to redeem was concerned. Perhaps it would not always be very convenient to give notice to a pawnor of an intended private absolute sale to a particular purchaser, because it could not always be determined when the negotiations were to be closed. Still, a conditional agreement with a purchaser to buy, to be closed at a certain time, if the pawnor did not redeem, might be made, and notice given to the latter of such time, and that the sale would be closed unless he redeemed by that time, paying- the debt and interest, and expenses of making such sale. Possibly, in such case, the uncertainty of the sale might make the terms of sale less advantageous to the pawnor, but he would have no right to complain, as he himself conferred the right of selling privately. Xotice might also be given of the day of sale, and, if it was to be made by an agent, of his agency, and then the pawnor would know his latest time to redeem, and where to send purchasers. Changing the mode of sale does not necessarily deprive the pawnor of all means *330 of preventing a sacrifice of Ms property; and, however much of the trouble and expense of a public sale a pawnee may be relieved from, by authority to sell privately, if his authority only extends to change the mode of sale, and he is not relieved from giving notice, he is still bound to give the pawnor an opportunity to redeem his pledge before he is foreclosed. The privilege must be taken and exercised with the burden.
These principles evidently governed this Court in the decision in Andrews v. Clerke, (3 Bosw., 587.) In that case, the defendant had certain stock of the plaintiff, as security for certain advances, and it was agreed, as in tMs case, that in case of a fall of the market value, which the plaintiff was bound to watch, if the plaintiff did not repay enough of the advances to leave the stock a good security for the residue, the defendant might sell such stock at the Hew York exchange board, a private association of persons dealing in the buying and selling of stocks in the Oity of Hew York. There was no waiver of notice in the agreement between the parties. After a fall in the price of the stock, it was sold at such board at the highest market price of the day of sale, leaving the plaintiff in debt for a deficiency of such price, in repaying such advances. This Court held that “ the defendant could not lawfully sell the stoclc, without first notifying the plaintiff of the time and place of sale,” even if it had been the duty of the latter to furnish further security on the morning of the sale. They further held, that the authority to sell conferred no power which the law had not granted to every pledgee, in case of a default in paying the debt., (referring to the cases of Stearns v. Marsh and Wilson v. Little, ubi sup., who seek to sustain the position,) and no more than every power to sell contained in a mortgage, which does-not provide how or when a sale shall take place; and the Court then added: “ It will not be pretended, in such a case, the mortgagee could, by a private sale, without notice to the mortgagor, cut off his equity of redemption.”
That case is precisely similar to this, as regards the ques *331 tion, in all substantial characteristics. In both the cases the debt became due on the failure of the borrower to bring it within a certain distance from the market value of the stock or property pledged. In that, the sale was to take place at the board of brokers, which is to a certain extent, private, as the public can only compete at it by employing one of the members, and are not present at its sittings. The difficulty of giving notice of a sale at that board would be nearly as great as at a private sale. There is no announcement made there of the ownership of the stock sold, and the owner of it could not collect bidders to attend and offer for it, unless they employed one of the members. Hotice of the time of sale, however, was as essential in one ease, as in the other the right to have an opportunity to redeem. A private does not necessarily become a secret sale, depriving the owner of the equity of redemption, of all knowledge of both time and place of sale. The law only requires a reasonable notice in case of a private sale. The day may be fixed, and a period allowed within which the sale is to be made on that day. Even in a public sale, the moment of sale is not fixed by the notice, or expected to be adhered to. In this very case, the property was in the hands of the testator’s agents for ten days after the demand of an additional deposit. If the property had, during that time, risen in value, so as to leave sufficient margin, could the defendant’s testator have sold without notice, at any future time, on account of the previous failure to keep such margin ? Or, would not the plaintiff, after such rise, if he did not receive any notice of sale, rather have had a right to presume that there was no intention to sell ? It seems reasonable that he should.
The sale, under the power to sell to reimburse advances, was therefore irregular, and afforded no protection to the defendant’s testator from liability for the value of the property. The original agreement, however, contains a clause that the plaintiff “ consigned such merchandise to the defendant’s testator for sale” generally. It does not appear very clearly, from the testimony, what the nature *332 of the business of the parties was, except, that once before, the defendant’s testator had shipped goods for the plaintiff, to a house in Liverpool, for sale, on which the former made advances and conducted the correspondence. An extra commission of one per cent was allowed in this case, for the advances, and an additional commission in case of a sale on default, and customary charges. Unless some duty was to be performed, in reference to the goods, such commissions would seem to have made the" contract usurious, which is not to be presumed. If the defendant’s testator sold under a general authority as a factor, he would not be responsible, except for indiscreet sales ; but there was no evidence of any such authority, and the charge and verdict did not proceed on that ground.
The verdict, therefore, should be set aside, and a new trial ordered, and judgment reversed on such verdict, with costs to abide the event.*

 We are informed that, upon appeal to the Court of Appeals, this decision was reversed.