Nelson *v.* Edwards.

———————◇———————

## NELSON and STURGES *vs.* EDWARDS.

In January, 1856, the Atlas Insurance Company, being indebted, its officers, and firms of which they were members, entered into an agreement to loan their notes to the company, to be used to pay such indebtedness, on the condition that the company should deliver to N. and S. collaterals sufficient to secure the repayment of such loans. They accordingly advanced their notes to the company, to the amount of $40,000, and on the 4th of February, 1856, the vice president of the company assigned to N. and S. certain notes, including a premium note given by the defendant to the Atlas Insurance Company, for a policy on a vessel, in trust to collect and pay such sums of money as they might procure for said company. This assignment could not take effect, at its date, in consequence of the securities being then pledged to a bank. But in May, 1856, the lien of the bank being discharged, the securities were transferred to N. and S.

*Held,* 1. That there was a valid consideration for the assignment to N. and S.

2. That the assignment conveyed to N. and S. the securities therein mentioned.

3. That the trust was a valid one, under our statutes ; it being for the benefit of creditors.

4. That N. and S. the trustees, had a right to collect the assigned securities, for the purposes of the trust.

*Held, also,* that the transfer to N. and S. of the premium note made by the defendant having been made on the 4th of February, a set-off, of a loss under the policy for which it was given, not accruing to the defendant

Nelson *v.* Edwards.

until March thereafter, could not be allowed against such note. CLERKE, J. dissented.

It is the right of one holding choses in action as collateral security, to enforce payment of them and thus satisfy the principal debt; unless prohibited from so doing by the contract under which he obtained such collaterals.

APPEAL by the plaintiffs from a judgment entered on a trial at the circuit, before Justice ALLEN, without a jury. The action was upon a premium note, given by the defendant, to the Atlas Mutual Insurance Company, on effecting an insurance upon a vessel. The defendant, in his answer, alleged by way of set-off and counter-claim, a loss and damage sustained by the property insured, by the perils insured against, during the running of the policy. The following facts were found by the court: *First*. The note in controversy was a premium note, given for risk on the schooner *Gardner Pike* on the day it bears date, by the defendant, the maker, to the Atlas Mutual Insurance Company, a corporation duly created by law, and doing business in the city of New York, under charter and by-laws, copies of which were annexed. *Second*. Before the 4th of February, 1856, the note was transferred by the said company to the American Exchange Bank, with others, to the amount of more than $5000, as collateral to loans made by the bank to the said company. The note was made payable on the face thereof to the Atlas Mutual Insurance Company, and was indorsed as follows, by the secretary of the company:

"Pay                 for account of the Atlas Mutual Insurance Company.        GEORGE H. TRACY, Secty."

*Third*. On the 14th day of January, 1856, the trustees of the said company, at a regular meeting, passed the following resolution, to wit: "*Resolved*, That the officers of the company be and are hereby authorized to arrange with any parties, in or out of the board of trustees, for the use of their names, either as makers or indorsers of such paper as it will be necessary for the company from time to time to have, and

Nelson *v.* Edwards.

they may give any security, and make such allowance as they shall think proper, for the use of such paper. *Fourth.* On the 15th day of January, 1856, the following instrument was executed and delivered, to wit:

"*New York, January 15th,* 1856.

We, the undersigned, agree to and with each other, and with the Atlas Mutual Insurance Company, that we will lend our notes to the amount of $5000 each, to said company, and will indorse each other's paper so given to an equal amount, on the conditions as stated below, such paper to be given to T. S. Nelson and J. S. Sturges, special trustees, to be used by them as they may think proper, for the benefit of the company, and to be made at such date as they require. It being clearly understood that our liability on this paper, either as makers or indorsers, shall be fully secured by a deposit of collaterals, to such an amount and of such character as said trustees shall think sufficient to cover all the paper used under this arrangement; such securities shall be placed in the hands of T. S. Nelson and J. S. Sturges, as special trustees for all parties concerned, and we hereby give to said special trustees full power and authority to sell said collateral securities, or any part or portion thereof, at the board of brokers, in the city of New York, or at public sale, or at private sale, or at the option of said special trustees, and without advertising the same, or otherwise giving us any notice. It is also clearly and distinctly understood, that should any loss occur ultimately to any parties to this arrangement, that such loss shall be borne *pro rata,* by all the parties giving such notes. It is also understood that the said notes shall be paid by the company, by the first of November, 1856; but the parties are, in the meantime, to give new paper for renewal for the same, or a less sum, until finally paid in full, as above." Signed, on behalf of the company, by E. RUSSELL HINCKLEY, vice president. And signed also by several other persons and firms.

*Fifth.* The signers of the foregoing instrument were trus-

tees of the said company, or were firms, of each of which a trustee was a member. *Sixth.* Under, and by virtue of the said instrument, $40,000 in notes were advanced and used by the said company and for its benefit, and the plaintiffs have not been fully reimbursed, but there is a deficiency to an amount exceeding the amount of the note in controversy. *Seventh.* On the 4th day of February, 1856, the following instrument in writing was executed and delivered to the plaintiffs :

"*New York, February 4th,* 1856.

Whereas, the Atlas Mutual Insurance Company is indebted to the American Exchange Bank : and whereas, said bank holds divers securities belonging to said company, pledged to said bank as collateral to such indebtedness : Now, the said company, for value received, hereby consigns and transfers to T. S. Nelson and James S. Sturges, special trustees, all the said securities, subject only to the pledge thereof for indebtedness, to be held or used by the said T. S. Nelson and James S. Sturges, special trustees, as collateral security for the payment of any sums of money which they may procure for said company by the discounting of any paper whatsoever. THE ATLAS MUTUAL INS. CO., per E. RUSSELL HINCKLEY, [L. S.] Vice Prest. Attest, GEO. H. TRACY, Sec'y."

That there was no resolution of the board of trustees authorizing said instrument, other than the one bearing date January 14th, contained in the third finding of fact. *Eighth.* In the month of May, 1856, the note in controversy was delivered by the American Exchange Bank to the plaintiffs, under the instrument in writing bearing date February 4th, 1856. *Ninth.* There was a loss on the policy on which this premium note was given, to the amount of $171.09, which loss was adjusted and liquidated by the said company on the fifth day of March, 1856, and was then due and payable.

And the judge found and decided, as matter of law :

I. That the plaintiffs were not, as against the defendant having a claim and demand against the payees, *bona fide*

holders for value of the note counted upon, but the note in the hands of the plaintiffs was subject to all defenses which would have been available as against the payees.

II. The loss under the policy for which the note was given is allowable in this action, as an offset to the note in the hands of the plaintiffs, and being more than the amount of the note, the plaintiffs cannot recover.

Judgment was accordingly given for the defendant, for costs.

*Winchester Britton,* for the appellants.

*Beebe, Dean & Donohue,* for the respondent.

MULLIN, J. The Atlas Insurance Company had an un-doubted legal right to receive the note of the defendant in payment of the premium on the insurance of his vessel, and the note was a valid and available security in its hands. The said company was authorized by § 12 of the charter of the Atlantic Mutual Insurance Company, (which was made a part of the charter of the Atlas company,) " to receive the notes of its dealers for premiums in advance, of persons in-tending to receive its policies, and to negotiate such notes for the purpose of paying claims or otherwise in the course of its business." It (the Atlas company) was justly indebted to the American Exchange Bank, in large sums of money, and the note in suit, with others, was held by it as collateral security for the payment of said indebtedness. In January, 1856, the said Atlas Insurance Company being largely in-debted and unable to pay, its officers, and firms of which they were members, entered into an agreement to loan their notes to the company to be used to pay such indebtedness, on the condition that the company should deliver to the plaintiffs collaterals sufficient to secure the repayment of such loans. On the 4th February, 1856, the vice president of the compa-ny assigned to the plaintiffs the notes in suit, together with

others, in trust to collect and pay such sums of money as they might procure for said company. This transfer was unquestionably made to carry out the arrangement of the 15th January, 1856, above referred to. This transfer could not take effect at its date, the lien of the bank not then being discharged; nor did it take effect until May, 1856, when the bank transferred to the plaintiffs the securities held by it as collateral, as above mentioned.

If the transfer of the 4th February was valid, the plaintiffs acquired at that time a legal interest in the note in suit, and are entitled to hold it discharged of the offset of the defendant. The court find that the *cestuis que trust* advanced their notes to the amount of $40,000, pursuant to their agreement of January, 1856. There was therefore a valid consideration for the assignment made by the officers in February thereafter. Under such circumstances no person should be permitted to raise the question as to the power of the officers to transfer, except some person who could be injured thereby. A member of said company, or its creditors, might be injured by such a transfer, but not the defendant, who holds no such relation to said corporation. And so I understand the court of appeals to hold, in *Eno* v. *Crooke*, (10 *N. Y. Rep.* 66.)

We must hold, therefore, I think, that the assignment of February conveyed to the plaintiffs the said collaterals held by the bank, and of which the note in suit was a part.

The trust of which the plaintiffs are trustees was a valid one under our statutes, being for the benefit of creditors. And if valid, there can be no doubt of the rights of the trustees to collect the notes held by them for the purposes of the trust.

It is the right of the holder of choses in action as collateral security to enforce payment of them and thus satisfy the principal debt, unless prohibited from so doing by the contract under which he obtained such collaterals.

The transfer to the plaintiffs was made in February, and the loss which is the subject of set-off insisted upon by the

answer was not adjusted until the 5th March thereafter. The set-off did not accrue to the defendant, therefore, until after the transfer of the note to the plaintiffs. This, it seems to me, is a bar to the set-off..

I think the judgment should be reversed and a new trial ordered.

SUTHERLAND, J. concurred.

CLERKE, J. (dissenting.) The court below has found that the *cestuis que trust,* for whose benefit the note was transferred to the plaintiffs, were trustees of the company, or were firms of each of which a trustee was a member. He has also found that the note was delivered to the plaintiffs for the said purpose, in the month of May, 1856, and that there was a loss on the policy for which it was given, as a premium note, to the amount of $171.09, which loss was adjudicated and liquidated by the company, on the 5th of March, 1856, and was then due and payable.

I think that under such circumstances the plaintiffs should not be considered *bona fide* holders. Being trustees of the company, the law presumes that they were aware of the claim which the defendant had against the company, at the time it was transferred to the plaintiffs for their benefit. It is, consequently, in their hands, subject to all defenses which would have been available against the company. The fact that the note had been deposited with the American Exchange Bank as security for indebtedness due the bank, by the company, and that the former transferred it by permission of the latter, to the plaintiffs, does not alter the character of the transaction. The company had never parted with their absolute property in the note; the bank was merely the pledgee of it, and in transferring it to the plaintiffs, transferred the title of the company, not their own title to it. In doing so the bank merely relinquished its claim to it as a se-

curity for indebtedness, having received other security in its place or the indebtedness having been satisfied.

It is unnecessary to consider at any length the other questions presented in the case. They are all alike untenable.

The judgment should be affirmed with costs.

Judgment reversed.

[NEW YORK GENERAL TERM, May 4, 1863. *Sutherland, Clerke* and *Mullin,* Justices.]