(34 App. Div. 526.)

TOPLITZ et al. v. BAUER et al.

(Supreme Court, Appellate Division, First Department.  November 25, 1898.)

1. PLEDGES—SALE—DEMAND AND NOTICE.

Where there is no time fixed for the redemption of a pledge, or where the time has been fixed, and has been rendered indefinite by a subsequent agreement, the pledgee cannot sell the pledge without a demand and notice.

2. SAME—FORFEITURE—WAIVER.

A contract pledging a life insurance policy authorized the pledgee to surrender or sell the policy on default in payment of a note.  Held, that where extensions of the note were given because of efforts of the pledgor to obtain money with which to pay it, and she was induced by the pledgee not to dispose of another policy for the purpose of applying its proceeds in payment of the note by a promise that the pledgee would not sell or surrender the policy held as such collateral, it constituted a waiver of the pledgee's right to surrender or sell the policy without notice.

3. SAME—CONVERSION BY PLEDGEE—TENDER.

    If the pledgee sell the property without notice, the pledgor may sue for conversion without tendering the debt.

4. SAME—MEASURE OF DAMAGES—INSURANCE.

    At the time a policy of life insurance was pledged, insured was suffering from an incurable disease, and within six months thereafter died as a result of such disease. The pledgee knew the facts, but surrendered the policy to the insurance company, which was not bound to reinstate it. Insured could not obtain any insurance at the time in any other company, on account of his illness. *Held*, that the measure of damages was the amount the beneficiary would have obtained on the death of insured.

    Appeal from trial term, New York county.

    Action by Cecelia Toplitz and another against Louis Bauer and others, as executors of the last will and testament of Charles Bauer, deceased. From a judgment entered on verdict in favor of plaintiffs, and from an order denying a new trial, defendants appeal. Affirmed.

    Argued before BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

    Wm. B. Hornblower, for appellants.

    Louis Marshall and Henry Brill, for respondents.

    PATTERSON, J. This action was brought to recover damages for the alleged conversion by the defendants' testator of a policy of life insurance pledged by the plaintiffs' assignor as collateral security to a loan made by the testator, Charles Bauer, on the 16th of July, 1890, to Rosa Lisner (the plaintiffs' assignor) and George Lisner, her husband; the latter being also the assured mentioned in the policy of insurance pledged. When the loan was made, Rosa and George Lisner delivered to Charles Bauer an instrument dated July 15, 1890, by which they transferred and set over to him all their right, title, and interest in and to a certain policy of life insurance issued by the Mutual Life Insurance Company of New York on the life of George Lisner, and in the same instrument they constituted Charles Bauer their lawful attorney to take all proceedings necessary for the recovery and collection of any sums that might fall due under the policy. They also at the same time made and delivered to Charles Bauer their promissory note, by which they promised to pay, five months after date, to their own order, $1,100, at 120 Broadway, New York City. In connection with and annexed to this note was an instrument signed by Rosa Lisner and George Lisner, in which they declared that they had deposited with Charles Bauer, as collateral security for the note, policy No. 137,484 of the Mutual Life Insurance Company of New York, on the life of George Lisner, and that in case of the nonperformance of the terms contained in the note, or in case of the failure of the subscribers to pay any and all premiums, premium notes, or interest on premium notes, coming due or which may be a lien on the above-named policy during the continuance of the aforesaid note, etc., "then and in either such case the legal holder of the said promissory note is hereby authorized to surrender to the company said policy, or to sell the same, without demand and notice,

at public or private sale or otherwise, in this or any other place, at the option of said legal holder." Other provisions are contained in the instrument annexed to the note, authorizing the holder of the note to surrender the policy or collect it in the event of certain contingencies, but they are not material to the controversy at present. By the terms of the note, it became due on the 16th of December, 1890. It was not then paid, but payment was extended, and other extensions were subsequently granted in writing; the last written one being on May 10, 1893, when the time was extended to June 10, 1893, and payment of interest on the note to March 29, 1893, was acknowledged. We shall assume, for the purposes of the decision of this case, that up to June 10, 1893, at least, the relations of the parties and their rights were the same as those originally constituted when the loan was made and the security given, on the 16th of July, 1890. Neither the principal nor the interest was paid on June 10, 1893; and the Lisners thereafter, and prior to the 1st of July, 1893, had conversations and negotiations with Charles Bauer and with his brother Louis Bauer respecting further indulgence upon the note. In all that was said and done by Louis Bauer from the beginning to the end of the transactions with the Lisners, he was the representative and agent of Charles Bauer, and his authority to bind Charles Bauer is in no way questioned. It appears that Charles Bauer left for Europe about the 1st of July, 1893, and returned on the 6th of October, 1893. During his absence many interviews were had between Rosa Lisner and Louis Bauer respecting the payment of the loan and the redemption of the security. There is a conflict between the testimony of Rosa Lisner and Louis Bauer as to the substance of those interviews, but both parties agree that they related not only to an extension of the time of payment of the note, but they specifically referred to the disposition to be made of the policy of life insurance. The determinant facts of the case may be taken up for consideration as of the date of September 27, 1893, when a letter signed, "Charles Bauer, S.," was sent to Rosa Lisner, which is as follows:

"Some time since, you informed me that your brother-in-law was going to take care of the loans on the policies of your husband's life. So much time having elapsed, I beg to inquire if it is still his intention to do so. If not, I wish you would make arrangements with some one else to take these loans. as my parties now insist on either the principal or interest.
                                                        "Charles Bauer, S."

That letter was written by one Solms, a clerk of Charles Bauer, and, as Solms swears, in the ordinary course of his business and employment. It will thus be perceived that at the date of that letter it was known that Rosa Lisner was making efforts to procure money for the payment of the loan, and that no time was fixed for its payment. Subsequent to that date, and about the 7th of October, 1893, Rosa Lisner had a further conversation with Louis Bauer concerning the loan and the policy. It was about the 7th of October, the day after Charles Bauer returned from Europe; and she and one of her daughters state that they also had conversations with Charles Bauer on the same subject after his return. The rights of the parties to this action depend very largely upon what

was said in those conversations.   There is no doubt that they related
to the policy of insurance pledged as collateral, and what should be
done with it, and not merely to an extension of the time of payment
of the loan.   Louis Bauer swears that he stated to Mrs. Lisner and her
daughter that, unless the loan were paid off the first business day be-
fore the 12th of October, the collateral would positively be disposed of,
and that they said that was fair; if they did not pay the note by that
time, to "go ahead and sell out the collateral." · The Lisners, on the
contrary, swear that nothing was said about the first business day be-
fore the 12th of October, nor was any date fixed at which the collateral
might be surrendered.   They also testify that the money to pay the loan
was expected from Mr. A. Lisner, of Washington, a brother of George
Lisner, and that Mrs. Lisner stated to Charles Bauer that if he were re-
luctant to wait, or could not wait longer, she would sell a policy of life
insurance belonging to her, and issued by the Connecticut Mutual Insur-
ance Company, from the proceeds of which she would pay off the Bauer
loan, and that Charles Bauer said that in the condition of health of
George Lisner, and, in substance, the distress of Mrs. Lisner and her
family, he would not permit such a sacrifice to be made.   The jury, by
the verdict, necessarily found that the story of Mrs. Lisner and her
daughter was true, and that no time, therefore, was fixed at which pay-
ment must be made, to save the collateral from forfeiture.   On the
13th of October, 1893, Louis Bauer surrendered the policy of the Mutual
Life Insurance Company, and received therefor $1,494.   A few days
after that, upon receiving information that the policy had been sur-
rendered, Mrs. Lisner called upon Charles Bauer, and protested against
the act of Louis Bauer in surrendering the policy.   Efforts were made
to have it reinstated by the Mutual Company, but that company refused
to do so, in consequence of the precarious state of the health of the as-
sured.   He died some six months afterwards.   There is evidence that
Charles Bauer in October, after the surrender of the policy, declared
that Louis had surrendered it knowing that Charles had promised to
wait, and suggested that efforts be made to have the policy reinstated
by the company, and that Charles Bauer admitted that he promised Mrs.
Lisner to wait until Mr. Lisner, of Washington, could remit the money.
This conversation, it is true, related to the payment of interest, and not
principal; but it will be observed that in the letter of September 27,
1893, what was required was the payment of either principal or interest.
Upon the foregoing state of facts, the question is whether there was a
wrongful conversion of the policy of life insurance.

Notwithstanding the assignment dated July 15, 1890, of that policy,
the relations existing between Bauer and Mrs. Lisner were only those
of pledgor and pledgee; and, under ordinary circumstances, before the
collateral security could be resorted to, notice of sale would have been
necessary.   The right to redeem the pledge at common law was one
that could be cut off in no other way.   The effect of a default in pay-
ment of the debt would give to a pledgee a right to sell, but the for-
feiture could not accrue without notice of sale.   Patchin v. Pierce, 12·
Wend. 61; Bryan v. Baldwin, 52 N. Y. 232; Stearns v. Marsh, 4 Denio,

227; Milliken v. Dehon, 10 Bosw. 325; Nelson v. Edwards, 40 Barb. 284. But parties may make their own contracts as to any disposition of a pledge. Baker v. Drake, 66 N. Y. 518; Genet v. Howland, 45 Barb. 560; Milliken v. Dehon, 27 N. Y. 364. And undoubtedly that was done by these parties when authority was conferred upon Charles Bauer to surrender or sell the policy on default in the payment of the principal indebtedness; and that stipulation of their contract would have run through the whole transaction, and been operative down to October, 1893, unless the contract were modified. Williams v. Trust Co., 133 N. Y. 660, 31 N. E. 29. But in this case the jury have found that the contract was modified; that modification consisting of a waiver of the right to sell on the ultimate default until Mrs. Lisner could have an opportunity of raising the money to make payment to Charles Bauer. The jury found that no time was fixed at the October interview. Where there is no time fixed for the redemption of a pledge (Wilson v. Little, 2 N. Y. 448), or where the time has been fixed, but has been rendered indefinite by a subsequent agreement between the parties, it is not competent for the pledgee to sell a pledge without a proper demand and notice. Pigot v. Cubley, 15 C. B. (N. S.) 701. That was the situation of this policy of insurance at the time it was surrendered by Louis Bauer. The understanding, as the jury must have found it to be, was not merely one extending the time of payment, but the parties were expressly dealing with the preservation of Mrs. Lisner's right to redeem the security; and we think, on the whole evidence, that the jury was justified in finding that there was a parol consent to waive, equivalent to a modification of the right of Bauer to resort immediately, and without notice, to the surrender of the policy for the payment of the debt. Thus, there is established by the evidence, and the finding of the jury thereupon, that there was a waiver of the right to forfeit the policy, and we have to consider the legal effect of that waiver. The contention is made that it was ineffectual to operate any change in the rights of Bauer, because no consideration passed to support the waiver. It is not necessary to decide in this case whether a new consideration would be required, to support a mere promise to extend the time of payment of the loan. That is not the question here. Suing to recover upon a loan is one thing. The right to resort to a forfeiture of the pledge is another and separate thing. It was the right of the pledgee at common law to redeem the pledge at any time before actual foreclosure of that pledge, whether the creditor had pursued his remedies to recover the debt or not. By the contract between the pledgor and pledgee in this case, the strict common-law right of the pledgor to redeem was abandoned, but by the waiver of the privilege which the pledgee had under that contract there was a reinstatement of the pledgor's right to a notice before forfeiture. If the pledgee, before resorting to the security, had recalled the waiver, and informed the pledgor of his intention to sell, possibly he might lawfully have done so. But there was a specific understanding, as the jury must have found, not to resort to the security at once, which necessarily implied that the right to redeem still continued. Was a consideration required, as mat-

ter of law, to support that waiver? Counsel for the appellant relies upon the case of Williams v. Stern, 5 Q. B. Div. 409, as holding that a consideration was necessary. It was held in that case that the promise of the pledgee, after default, to wait for a week for the payment of the indebtedness, did not preclude him from resorting to the security, because the promise to postpone the day of payment was not supported by any consideration. The contrary to that was held in Albert v. Investment Co., L. R. 3 Q. B. 123; but it would appear that the latter case was overruled by the former, notwithstanding that there is a distinct difference between the two cases. In Williams v. Stern it was held that there was no evidence of a waiver by the defendant of a right. to resort to the security. In Albert v. Investment Co. the pledgee had taken possession of the goods, and had agreed that he would not sell them, provided a sum of money were paid before a certain date. The money was tendered in due time, but the pledgee sold before the time, and the court held him liable in trover. Here, as in Albert v. Investment Co., there was an express waiver of the right presently to resort to the security, and such a waiver comes within the rule laid down by the courts of this state respecting waivers of forfeitures. It is a rule not altogether in analogy with that of a waiver of strict performance of contracts for doing work by builders and others, but it is the same rule as that applied in cases of claimed forfeitures of leases, as in Ireland v. Nichols, 46 N. Y. 413, or policies of life insurance, as in Titus v. Insurance Co., 81 N. Y. 419. In the case last cited, it is said:

"It may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is, as matter of law, waived; and it is now settled in this court, after some difference of opinion, that such a waiver need not be based upon any new agreement or an estoppel." Citing cases.

There is nothing in Armstrong v. Insurance Co., 130 N. Y. 560, 29 N. E. 991, which affects the principle stated in Titus v. Insurance Co., in which latter case it is also stated that:

"Forfeitures are not favored in the law, and this doctrine of waiver is not peculiar to insurance policies, but is applicable to all cases of forfeiture."

The language of the court in Insurance Co. v. Norton, 96 U. S. 234, applies directly here:

"Grant that the promise to extend the note is without consideration, and not binding on the company,—which is perhaps true as well when the promise is made before maturity as when it is made afterwards,—still it does not take from the company's act the legitimate effects of such act upon the forfeiture of the policy. Perhaps the note might be sued on in disregard of the extension, but, if it could be, that would not annihilate the fact that the company elected to waive the forfeiture by entering into the transaction. If it should repudiate its agreement, it could not repudiate the waiver of the forfeiture, without at least giving to the assured reasonable notice to pay the money."

We are of the opinion that there was a waiver of the right to surrender the policy, based upon the continued efforts of Mrs. Lisner to get the money from her brother-in-law in Washington, or the prevention of

her disposing of the Connecticut Company policy, and the application of its proceeds to the payment of Bauer's loan.     There is no question of tender involved in this case.     The pledgee sold the property notwithstanding the waiver, and there was no direct tender to him necessary. Stearns v. Marsh, 4 Denio, 227.

The only remaining question is as to the measure of damages.     The appellants' contention is that the surrender value of the policy is all that could be recovered.     Undoubtedly the general rule in actions of conversion is that the measure of damages is the value of the property at or about the time of the conversion, but it is necessary to take into consideration the peculiar character of this pledge, and what was done with it.     As was said in Whitehead v. Insurance Co., 102 N. Y. 143, 6 N. E. 267, if we should limit the recovery to the surrender value, it would simply be adding the sanction of the court to the unauthorized surrender, and make it valid.     Here was a contract of insurance upon the life of a man then suffering from an incurable disease, and who died within six months after that contract was destroyed by the wrongful act of Charles Bauer's agent.     It was impossible to reinstate that contract.     The insurance company was not bound to reinstate it, and the necessary consequence of the surrender was the loss of the whole amount of the insurance over and above the debt due to Bauer.     It may be said that ordinarily the measure of damages would be whatever would make good the loss to the assured occasioned by the surrender, but it is obvious in this case that no other insurance could be obtained in a responsible company upon the life of a dying man; and there is no measure of damages that can be resorted to, except that which was applied on the trial.

The judgment and order appealed from should be affirmed, with costs. All concur.