## HAMILTON v. STATE BANK (DUBUQUE BRANCH).

1. **Instructions:** CONSIDERED TOGETHER. Instructions must be regarded as a whole, and a specific objection cannot prevail against *one*, if the instructions taken together cover the point objected to.

2. **Pleading and practice:** USURY: REPLICATION. In an action against defendant, who was a banking corporation, for the sale and conversion of some United States bonds which plaintiff claimed he had merely pledged to defendant as security for overdrafts or advances that might be made to him, the defenses pleaded were: First, prior authority from the plaintiff to sell the bonds. Second, a sale of the bonds and a credit for the proceeds on the bank account of plaintiff, who acquiesced in the same with full knowledge of the sale, and checked out the balance due him on such account. *Held*, that neither of these defenses could be defeated by plea or proof of usury in the back account.

—— ALITER, if the bank had set up, by way of *set-off*, its account against the plaintiff, with a view to defeat his recovery or reduce its amount.

3. **Pledge:** PRIVATE SALE. Where property pledged as security is sold by the pledgee at private sale, by the direction or with the consent of the pledgor, the pledgor cannot afterward object that the sale was not made in accordance with the requirements of the law regulating sales of pledged property.

*Appeal from Dubuque District Court.*

## THURSDAY, JUNE 13

SALE OF PLEDGED PROPERTY: PLEADING, ETC. In view of the questions made by appellant, it is necessary briefly to state the pleadings. The plaintiff dismissed the first count of the petition, leaving the cause to stand upon the second.

The second count alleges in substance that defendant is a banking corporation; that on the 17th day of August, 1864, plaintiff, to secure defendant for any overdrafts or advances it might make to him, did agree to pledge, and did pledge to the defendant five $1,000 United States 7–30 bonds, first series, with coupons attached; that defendant

received said bonds as such pledge, and for no other purpose; that on the 15th day of February, 1865, plaintiff received of defendant the interest coupons for the first six months' interest due thereon, but has received no others; that afterward, January 22, 1867, plaintiff demanded said bonds and coupons so pledged, but defendant absolutely refused to deliver the same; that before this, viz., July 15, 1866, defendant wrongfully sold and converted said bonds and coupons to its own use, at which time they were worth seven per cent above their nominal value. To recover the value of said bonds and coupons and interest, the action was brought and judgment prayed.

The answer, first, denies the wrongful conversion and the value as alleged in the petition; second, admits the pledge but denies the wrongful sale and conversion. "On the contrary the defendant says the bonds were sold with the knowledge, consent and advice of the plaintiff and for their full market value, and the proceeds thereof were credited to the plaintiff on his bank account, all of which was ratified and confirmed by him."

Third, the answer alleges that plaintiff made large overdrafts on defendant which were paid by defendant, and plaintiff became indebted to defendant for exchange on drafts, and costs of collecting drafts, and interest on overdrafts, and damages on protested drafts cashed by defendant for plaintiff, amounting in all to over $300; that in the settlement of such interest, exchange, costs of collection and damages, a rough estimate was made, fixing the same at $269.70 by agreement; that the parties then had a full accounting of all matters, including the bonds pledges as aforesaid, and the sale and proceeds thereof, and in such accounting there was found due from defendant to plaintiff $283.80 which defendant then paid to plaintiff in full satisfaction of all matters, including the bonds, sale and proceeds of the same.

Fourth, the answer alleges that after allowing plaintiff the full market value of the bonds at date of sale, and all other credits, the balance due plaintiff did not exceed $233.80, which sum was fully paid plaintiff by defendant as aforesaid.

No written reply is filed.

On these pleadings the cause was tried to a jury. All of the evidence is in the record on appeal.

On the trial the plaintiff, as a witness for himself, testified to the pledge of the bonds to the defendant for the purpose stated, viz.: to secure overdrafts; that on the 22d of January, 1867 (the day before the suit was brought), he went to Graves, vice-president and acting manager of the bank, to redeem the bonds; that Graves told him they were sold, and refused to deliver them or allow redemption to be made.

Babbage, a banker, testified that 7-30's were as high as seven and one-half per cent above par in November, 1866; ruled high in June 1866; were worth five to six per cent on January 22, 1867. This is the substance of plaintiff's testimony in chief.

Graves, as vice-president and general manager of defendant, testified for defendant in substance as follows: Admitted the pledge of the $5,000 United States 7-30 bonds as stated; says the bonds were placed to the credit of the plaintiff April 5, 1865. He says, "I saw plaintiff on the morning of that day, and asked him what he thought of selling, and I said I thought it a good time to sell. He left it to me. I then sold them, and placed the bonds at par value to his credit for $5,000 on bank account. This took all the collateral in our hands and left $1,720 due us. In addition, we held for collection drafts protested to the amount of $20,000, but these had nothing to do with the bank account. He promised to pay April 6, which he did, and on the 5th of May he

drew out the balance, $233.80." This balance included the $5,000, the proceeds of the bonds. The books of the bank and defendant's pass-book were also introduced in evidence, both showing plaintiff to be credited with the bonds on the 5th day of April, 1865 (the pass-book enters a credit of that date to plaintiff for $5,000, but does not state for what). " On the 5th day of May, 1865, we owed plaintiff $233.80. Plaintiff at that time drew the check for $233.80, had his book (pass-book), and was satisfied. He never complained until a few months ago. When I sold bonds, April 5, 1865, they were worth ninety-nine cents to par. I gave plaintiff par. The check for $233.80 was drawn by plaintiff to settle his account. When he drew it he knew I had sold the bonds, because I gave him a duplicate deposit ticket."

Bonds depreciated after April, 1865, and in September, 1865, were not worth above ninety-one cents.

Plaintiff being recalled testified that he never authorized Graves, on the 5th of April, 1865, or at any time, to sell the bonds ; that he did not have or see his pass-book till the 5th of May, 1865 ; thought it was lost ; that on the said 5th of May, the teller handed him the pass-book and told him there was $233.80 due him ; that he, without looking at the book, except to notice the balance, drew a check for the $233.80 and got the money ; that, being busy, he did not examine the book for about two weeks, and then found the credit of $5,000, as of date April 5, 1865 ; that he had no duplicate deposit ticket for the amount, and that Graves never gave him such a ticket. He also testified that when he learned that the credit of $5000 was for the bonds, he went to the bank officers and to Graves and denied their authority to sell the bonds, and that Graves promised him to make it all right and to give him other bonds for them, of the same series ; that he went to see Graves several

times, who kept putting him off. There was evidence *pro* and *con* respecting the question whether the bank had charged plaintiff interest at usurious rates. Verdict and judgment for defendant. Plaintiff appeals

*Roberts & Fouke* for the appellant.

*Adams & Robinson* for the appellee.

DILLON, J. — The plaintiff's action was for the wrongful conversion of the bonds pledged. No other cause of action was alleged. The defense was two-fold. First, that the bonds were sold by the pledgee by the express direction of the plaintiff. Second, if not that, the plaintiff knowingly received the credit therefor, and on the 5th of May, by checking out the balance due him of $233.80, had ratified the sale.

The defendant did not set forth in his answer or in any manner plead, by way of set-off or cross action, the account of the bank against the plaintiff. That the plaintiff did not regard the answer as pleading any set-off or cross demand, is evident from the fact that no reply was filed. On the trial the numerous checks of the plaintiff on the defendant, the pass-book, the bank-books and deposit tickets were introduced in evidence. Plaintiff also gave evidence tending to show that in the account which was balanced on the 5th day of May, the defendant had charged him professedly for exchange, interest, etc., more than the legal rate of interest. The defendant gave evidence on its behalf tending to show the contrary.

At the defendant's instance the court charged the jury "that the first count in the petition being withdrawn, the only thing for the jury to consider is whether the bonds were wrongfully converted by the defendant," and that

"if the jury believe that the bonds were sold with the consent of the plaintiff, or if he afterward knowingly received the benefit of the sale, he cannot recover."

Plaintiff excepted, and now complains of these instructions. They appear to us to be correct in principle, and applicable to the pleadings and the evidence.

The specific objection made by appellant is the statement that the alleged wrongful conversion is the only question for the jury. This was correct under the pleadings, and certainly, in view of the full instructions of the court on every point in the case, not erroneous. Such was the only question which, under the issues, as the parties made them, was proper to be tried. This question, it is true, involved several considerations, such as, whether Graves had prior express authority from the plaintiff to sell, or, if not, whether the plaintiff had ratified the sale by accepting the proceeds of the same. So the question of ratification involved the other question, whether the defendant knew when he drew the check for $233.80, on the 5th day of May, that the bonds had been sold and the proceeds credited to his account. While this is so, it is likewise true, that the question of the wrongful conversion was, in the sense in which it was intended by the court, the real question at issue and on trial between the parties.

The specific objection taken by appellant to this part of the instruction is that it withdrew from the jury all questions of usury in the bank account of the defendant against him.

1. INSTRUCTIONS: considered together.

The answer to this is to our minds satisfactory.

It is, first, that other portions of the charge did instruct the jury as to usury, and the instructions must be regarded as a whole.

Second, under the pleadings the question of usury had no proper place in the case. If the bank had set up by

**2. PLEADING AND PRACTICE: usury: replication.** way of set-off its account against the plaintiff with a view to defeat his recovery or reduce its amount, he might have replied usury. But it made no such defense. As before stated, its only defenses were, first, prior authority from plaintiff to sell; second, subsequent settlement by the plaintiff, and ratification of the sale with full knowledge thereof.

. Under the issues, defendant could properly offer no evidence of any other defense. If the defendant had offered the bank account in evidence as a set-off, or for the purpose of reducing or defeating plaintiff's recovery, the latter could successfully have objected to its introduction. Neither of the above two defenses could be met by a replication of usury. That is to say, if the plaintiff authorized the sale of the bonds, by Graves, as the latter testified, and they were sold and credited, plaintiff, who accepted the proceeds and, with knowledge, checked out the balance, usury in the bank account if proved would not *avoid* this defense.

And notwithstanding the able argument of appellant's counsel, which we have carefully considered, we cannot see how this view at all militates against the doctrine of *Smith* v. *Milburn* (17 Iowa, 30), as to where a replication is not necessary

Appellant also complains of the fifth paragraph of the charge of the court given on its own motion. **3. PLEDGE: private sale.** This portion of the charge is as follows:

"If you find that the sale of the bonds claimed for was made by the consent of the plaintiff, or with his knowledge, or if you find that he accepted the credit on his bank account, arising from the avails of such sale, although he did not know thereof until after the sale, then he cannot complain that the sale was not made in accordance with the requirements of the law regulating sales of property pledged, or, at most, not unless he shows that at

the time of such sale the bonds did not realize to him the full, fair market value of the same."

Appellant makes the point that this direction to the jury "repudiates the claim that the bonds were a pledge, and overturns the whole doctrine of pledge; that a pledgor has a life-time to redeem; that if the pledgee wishes to sell, he must first demand redemption, and if not redeemed the pledgee must have reasonable notice of the time and place of sale; that twelve hours is not a reasonable time, and that the sale must be at auction and conducted with the strictest fairness."

We have not been able to discover how this instruction is open to the objection of overturning the doctrine of the law concerning pledged property.

The charge must be looked at in view of the testimony. The sale referred to is the admitted sale of the bonds by Graves. This was conceded to be a private sale. It was not claimed to have been a sale made under the law of pledge. It was claimed to have been made by the direction and express consent of the plaintiff. And the instruction simply says, in substance, that if the sale was *so* made, or if the plaintiff afterward knowingly accepted the proceeds of such sale, he cannot complain, as there would in that event be no conversion. This is certainly the law. And in the case supposed in the instruction, the law certainly is not, as implied in the appellant's argument, that the pledgee must demand redemption, give notice to pledgor, and sell at auction. The sale is under the contract of the parties, and not under the law.

The reference in the charge to four checks signed by Graves, in Hamilton's name, as *bank memorandums*, did not, as we can see, prejudice the plaintiff's case.

Nor did the court, in the third division of the charge, improperly assume facts as proved. The facts referred to

were merely introductory, leading the minds of the jury to the controverted points in the case.

Nor did the court, in the fourth paragraph, give an unfair advantage to the defendant in its statement of the respective positions and claims of the parties.

Appellant's brief mistakes the latter portion of this paragraph in respect to the alleged settlement. The court did not hold, as appellant claims, that he was bound within a reasonable time to ascertain any mistake in the settlement. But it said to the jury that if " there was a mistake in the settlement, and the plaintiff, within a reasonable time after the discovery of such mistake, notified defendant thereof and claimed to have it corrected, then such settlement is not conclusive on him, and he may recover such amount as he may have shown you that he was actually damaged thereby."

This was not unfavorable to the plaintiff.

In our opinion the jury must have found either that the plaintiff gave authority to Graves to sell, or that he afterward knowingly accepted the proceeds of the sale. If this is so the alleged conversion was not established, and hence the rule as to the measure of damages, if there had been a conversion, becomes immaterial.

We do not, therefore, deem it necessary to enter upon an examination of the question, whether the damages are to be measured by the value of the bonds at the date of the sale, or at the date of the demand, or within a reasonable time after conversion, or after demand, or whether there may be a recovery of the highest market value down to demand or trial.

Affirmed.