———o———

Sophia A. Tatum, *et al.*, Appellants, *vs.* Samuel N. Holliday, Adm'r of Jno. S. McCune, *et al.*, Respondents.

1. *Deeds of trust—Constructive trusts—Redemption—Estoppel.*—Where a constructive trust, in favor of the former owner, follows a sale of real estate, he must commence proceedings to redeem within a reasonable time, or he will be estopped.

2. *Deeds of trust—Sheriff appointed trustee may sell by deputy, when.*—Where the original trustee in a deed of trust made to secure the payment of a debt or other liability, dies or is disqualified, and the county sheriff is appointed to act in his stead, the latter acts in his official capacity, and may sell by deputy.

3. *Trustee—Sale of land by—Sale in part or whole—Rule as to.*—The rule is firmly established, that a trustee in selling land, is trustee for both parties, and is bound to adopt all reasonable modes of proceeding in order to render the sale most beneficial to the debtor. Where property is susceptible of division, and will bring more by sale in separate parcels or lots, or where sale of a part will bring an amount sufficient to pay the debt secured, he is bound to sell accordingly If not, the sale will be held invalid on application of the party aggrieved. Where the land will sell for more as a whole than in parcels or lots, the trustee must exercise a sound discretion as to the mode of selling.

4. *Sale of land—Irregularities in—Infancy—Estoppel, etc.*—Parties in interest who are infants at the time of sale, cannot assent to irregularities therein, nor be estopped by reason of failure to take steps to set the same aside. And upon reaching their majority they may pursue their remedy.

*Appeal from St. Louis Circuit Court.*

*J. T. Tatum, with Lackland, Martin & Lackland,* for Appellants.

I. The doctrine as to staleness of claim does not apply to this case. The bill was filed in 1871. The sale was made in 1862. Some one or other of the plaintiffs had been endeavoring for several years to induce McCune to stand by the agreement made for redemption. It is not stale as to the minors and the *feme covert.* (Tyl. Inf., p. 159.) Neither is it stale as to the other plaintiffs,—sufficient time for the enforcement of the right of action, not having elapsed, to create a bar by any analogy to the statute of limitations. (Bollinger vs. Chouteau, 20 Mo., 89 ; Anthony vs. Rogers, *Id.*, 285 ; McNair vs. Lot, 34 Mo., 285 ; Damschroeder vs. Thias, 51 Mo., top p. 104 ; Ricords vs. Watkins, 56 Mo., 553 ; Poe vs. Domic, 54 Mo,, 127.)

II. The sale, having been conducted solely by the sheriff's deputy or agent, is void. (2 R. C. 1855, p. 1554. § 2 ; Pearson vs. Jamison, 1 McLean, 197 ; Berger vs. Duff, 4 Johns. Ch., 368 ; Hill, Tr., pp. 175, 540 ; Perry's Tr., § 799 and notes ; Graham vs. King, 50 Mo., 22 ; Howard vs. Thornton, 50 Mo., 291 ; Bales vs. Perry, 51 Mo., 449 ; Whittlesey vs. Hughes, 39 Mo., 13 ; White vs. Watkins, 23 Mo., 423.)

III. A constructive trust is imposed upon a purchaser, whenever he has acquired the title by conduct in the shape of assurances, or promises, or representations. (Clarkson vs. Creely, 35 Mo., 94 ; Same case, 40 Mo., 114 ; Dover vs. Kennerly, 38 Mo., 469 ; Same case 44 Mo., 145 ; Rutherford vs. Williams, 42 Mo., 18 ; McNew vs. Booth, 42 Mo., 189 ; Grumley vs. Webb, 44 Mo., 445 ; Sharkey vs. Sharkey, 47 Mo., 543 ; Chesley vs. Chesley, 49 Mo., 540 ; Wright vs. Barr, 53 Mo., 340.)

IV. The property was easily susceptible of sub-division, but it was sold in the lump. It brought less than its value. A sale under such circumstances renders the title in the purchaser voidable, at the option of the injured side. (Evans vs. Ashley, 8 Mo., 177; Gray vs. Shaw, 14 Mo., 341; Goode vs. Comfort, 39 Mo., 313; Carter vs. Abshire, 48 Mo., 300; Sumrall vs. Chaffin, 48 Mo., 402; Chesley vs. Chesley, 49 Mo., 540; Rector vs. Hart, 8 Mo., 448.)

*Glover & Shepley, with Holliday,* for Respondents.

I. Under the circumstances, as plaintiffs have waited until the property has largely increased in value before they sought to enforce this alleged trust, and for so long a period as over nine years, a court of chancery will not now enforce their claim. (2 Sto. Eq. Jur., § 1520; Boone vs. Mo. Iron Co., 17 How., 340; Baker vs. Whiting, 3 Sumn., 475; Brazier vs. Gratz, 6 Wheat., 528; Holt vs. Rogers, 8 Pet., 420; McNeil vs. Magee, 5 Mas., 244; McNew vs. Booth, 42 Mo., 189; Medsker vs. Swaney, 45 Mo., 273; Att'y Gen'l vs. Fishmongers Co., 5 Myln. & Cr., 16, 17.)

II. The mere fact that the property conveyed by deed of trust is sold in gross, is not, *per se* sufficient to avoid the sale; there must be some attendant fraud, unfair dealing or abuse by the trustee of the confidence reposed in him. (Goode vs. Comfort, 39 Mo., 313; Taylor's heirs vs. Elliott, 32 Mo., 175; Kellogg vs. Carrico, 47 Mo., 157; Carter vs. Abshire, 48 Mo., 300.)

WAGNER, Judge, delivered the opinion of the court.

This was a bill in equity, filed in the Circuit Court in March, 1871, to set aside a sale made under a deed of trust, and asking for permission to redeem. The deed of trust was executed in 1852, by David Tatum and Sophia A., his wife, to secure a note to one James M. Nelson for $5,000, with interest at the rate of six per cent. and payable in two years from date. David Tatum died in 1854, intestate. The plaintiff, Sophia A. Tatum, is his widow, and had a dower interest in

the property. The other plaintiffs are the heirs of David Tatum, and at the time of the sale were all minors except three. The property was the family homestead of David Tatum, and consisted of five acres of ground, with house and other improvements, at the junction of Clark and Jefferson avenues, in the city of St. Louis. The trustee was John C. Richardson, who died in 1860, without executing the trust. Upon the petition of Nelson, the sheriff was appointed, in 1862, to sell the land to execute the deed of trust. The sale was made by a deputy, the sheriff himself not being present. The entire property was sold in a body, though it had been staked out and platted in fifty-three lots, with streets and alleys, though there was no record of it, and the streets and alleys were not dedicated. At the sale the defendant, Mc-Cune, bought the property for $12,600, and the sheriff made him a deed therefor.

One of the principal grounds relied on by the plaintiffs, is, that McCune purchased the property under such circumstances as impressed him with a constructive trust, and that they, therefore, have a clear and undoubted right to redeem. It appears pretty clearly from the evidence, that the main object with Nelson in ordering the sale was not to collect his debt, but to obtain a higher rate of interest. His note was bearing six per cent. only, and he wanted ten. But the majority of the heirs being minors, no valid agreement to that effect could be made with them, and so there was an understanding that he should bid in the property and that the heirs might redeem by paying him his debt with ten per cent. McCune held an assignment of a judgment, confessed by Sophia A. Tatum, and was present and bid at the sale, but this judgment only bound her dower interest.

It is contended that the arrangement with Nelson was communicated to McCune, who assented to the same, and agreed if he purchased to hold the property on the same terms, that thereupon Nelson ceased bidding and allowed McCune to buy. But after a careful perusal of the testimony, we are unable to arrive at the conclusion that McCune made any de-

clarations or committed any act which would raise a resulting trust in favor of the plaintiffs. The evidence is insufficient to show that he made the promise, or understood it in the manner claimed by the plaintiffs; besides, Nelson still continued to bid, which is at variance with the position assumed.

Moreover, Joseph Tatum, who was then of age, and seems to have been instrumental in managing the affair, and in trying to bring about the arrangement, afterwards recognized the fact that the legal title was in McCune, which is irreconcilable with any trust set up on his part. His mother, Sophia A., did the same thing, and entered into a written agreement with him, by which she was to be permitted to obtain a reconveyance upon the payment of a certain amount of money within a specified period. Neither of these parties, nor the other heir, who was of age at that time, appear to have expressed any dissatisfaction with the sale or the manner in which it was conducted. Therefore, after lying by and remaining silent so long, it would be inequitable to allow them now to assert a right. Where a constructive trust follows a sale, and results in favor of parties, they must commence proceedings to redeem within a reasonable time, and that has certainly not been done here by those just above alluded to. Whether any of the other heirs became of age, so as to bring them within the same prohibition, we do not know, as their ages are not specified. It is, however, apparent that they are not all in that category, as one of them was a minor when this suit was instituted.

It nowhere appears in the various negotiations or acts of Sophia A. or Joseph Tatum affecting this property, that they had any authority to act for the infants, or that they even attempted to bind them. If McCune in his purchase obtained the fee simple title, then of course the interest of the minors as well as the others was divested. If, however, there were irregularities at the sale which rendered it voidable, those who were competent to act and of age, might waive the defect and ratify the sale, but the infants could not.

This brings us to another branch of the inquiry, viz: was the sale invalid because made by a deputy sheriff? If the sheriff acted in his official character as sheriff, then the sale was good, and could be legally performed by his deputy. But if he was simply a trustee, without regard to his capacity as sheriff, the sale would be void, because a trustee cannot delegate his trust.

Where a trustee in any deed of trust to secure the payment of a debt or other liability, dies, resigns or becomes disabled, the statute provides that the court shall make an order appointing the sheriff of the county trustee to execute the deed of trust, in place of the original trustee, and thereupon such sheriff shall be possessed of all the rights, power and authority possessed by the original trustee under the deed of trust; and such sheriff shall proceed to sell and convey the property and pay off all the debts and liabilities, according to the terms and directions of the deed of trust, and with the same force and effect; and in case of a deed of trust given for the benefit and use of any person other than a deed of trust to secure payment of a debt or other liability, such court shall make an order appointing some suitable person as trustee in such deed of trust, in place of the original trustee, to hold the property or estate conveyed by such deed to the same uses and trusts, etc., (Wagn. Stat., 1347–8, §§ 1, 2.)

It will be perceived that provision is here made for the appointment of two classes of trustees. The first is where the sheriff is appointed to sell under a deed to pay a debt or other liability, and the second is where a suitable person, other than the sheriff, is appointed to hold property for uses and trusts.

From the phraseology employed in the first, there might be some doubt as to the real character in which the sheriff acted, but we think the 4th section of the same law furnishes a solution and explains the legislative intent. It is there declared, that any person having a beneficial interest, present or future, absolute or contingent, in the trust property, may apply to the court for security to be given by the trustee.

This applies to the appointment made under the second clause of the second section, and shows plainly enough that it was deemed unnecessary to require any security of the sheriff when he was acting as trustee, and the only reason that can be assigned is, that it was supposed that his security as sheriff was sufficient. The sheriff, when making a sale under a deed of trust, must therefore be considered as acting officially, and what he can perform by himself, he can perform by his deputy.

The next question is: Did the trustee properly execute his duty in setting up and selling the property as a whole? The deed of trust contained a provision that in default of payment of the note the trustee should sell the property, or a part thereof, to satisfy the same. There are cases holding under similar deeds that a trustee is bound to divide the property when he offers it, else the sale will not be good. But whether the deed contains such a clause or not, the rule is firmly established that a trustee in exercising his duties and powers is a trustee for both parties, and is bound to act in good faith and adopt all reasonable modes of proceeding, in order to render the sale most beneficial to the debtor.

Where property is susceptible of division, and it will bring more by being divided and sold in separate parcels or lots, than by being sold in a body, or where by a sale of a part of the premises a sufficient amount can be realized to pay off the secured debt, then it is the duty of the trustee to make the division and sell a portion accordingly. and if he fails in this the sale will be held invalid on application of the party aggrieved. There are instances in which the whole of a piece of property will sell for more than it would by being separated, and in all such cases the trustee must exercise a sound discretion.

In the present case the evidence leaves no doubt but that the property was needlessly sacrificed by the action of the trustee in setting it up as a whole. The evidence is conclusive, that it was worth vastly more than it brought. The testimony of the real estate agents is equally strong that it

would have sold for more had it been put up in separate lots. That it could have been easily and advantageously divided, will admit of no controversy. In the depressed state of the market at that time, a portion of the property would have satisfied the debt. There was nobody to attend to the interests of the minors, and they are not bound by any arrangement made at the time of the sale or subsequent thereto.

If Joseph Tatum was present and assented to the manner in which the sale was conducted, that may be a good reason why he should be estopped, but it cannot affect injuriously the minors, for whom it is not shown that he had any authority to act. Those who were infants at the time, therefore, have a right to redeem, if they have pursued their remedy within a reasonable period, unless it can be shown that they are bound by the action of some one who had authority to act for them and bind them. This does not appear from the present record. Wherefore the judgment should be reversed and the cause remanded; the other judges concur.