## FITZGERALD VS. BLOCHER.

1. PLEDGE: *Sale of.*
   Where the subject matter of a pledge is divisable, the pledgee has no right to sell more than is necessary to satisfy the debt; and if he does so is responsible to the pledgor for the damage he may thereby sustain.
2. ————: *Waiver, etc.*
   The acceptance by the pledgor of the surplus arising from an illegal sale of the articles pledged, is no waiver of his right to damages resulting from the sale.
3. ————: *Notice of sale.*
   Where the pledgor, at the time of making the pledge, waives notice of sale, he cannot after the sale of the pledge complain of a want of notice.
4. ————: *Measure of damages for illegal sale.*
   Where a pledgee of scrip sells more than is necessary to satisfy his debt, and pays the surplus to the pledgor, who buys other scrip to replace what has been sold, the measure of damages is the difference between the price for which the excess sold, and that paid by the pledgor to replace it.

APPEAL from *Pulaski* Circuit Court.

Hon. S. W. WILLIAMS, Special Judge.

*Rose*, for apellant.

*Howard*, contra.

PINDALL, SP. J.:

This was an action by Blocher against Fitzgerald to recover damages for the wrongful appropriation and sale of certain Arkansas State scrip deposited as a pledge by Blocher with Fitzgerald's agents, as a collateral security for a note executed by Blocher to said agents for borrowed money. The note was dated December 11, 1874, and payable in 30 days ("fixed"), to the order of Behen and Rumbough, agents, at the banking office of George Brodie & Sons, and contains a provision, to the effect: That having deposited or pledged to Behen and Rumbough as security for the payment of this note, five thousand dollars in Arkansas five per cent. interest bearing treasury certificates, and I hereby give to said Behen and Rumbough full power and

Fitzgerald vs. Blocher.

authority to sell said collateral security or any part thereof at public or private sale, at the option of said Behen and Rumbough, on the non-performance of the above promise, or at any time thereafter, without advertising the same or otherwise giving me any notice.

The case was submitted to the court sitting as a jury, and resulted in a verdict for Blocher for $45.44.

The court found the facts to be, that plaintiff borrowed money of the defendant, gave his note for $1000, deposited $5000 in State scrip as security, with authority to sell when the note fell due. That when the note fell due, Rumbough, as agent for defendant, demanded payment, and told plaintiff the scrip would have to be sold, but promised to see the defendant and if possible get him not to sell for a few days. That the whole of the scrip was sold at its full market value, four days after the note fell due, and defendant sold more than was necessary to pay the note; that to replace the amount thus sold in excess of what was necessary, it cost plaintiff $45.44 more than he received.

That the plaintiff replaced the scrip so sold within two weeks after the sale.

That plaintiff received price of the excess so sold, without remark, except that he had asked indulgence a few days before the sale. Neither the note or the scrip were at the bank of Brodie & Son, where it was payable, when it fell due, but plaintiff never offered or tendered payment at said bank or elsewhere.

Upon the conclusion of facts the court finds the law to be: That defendant had a right to sell so much of the scrip as was necessary, and no more than was necessary to pay plaintiff's note. That for the damage done to plaintiff by selling the excess he is responsible to plaintiff. That the measure of damage is the difference between the price for which the scrip was sold, and the price paid by plaintiff to replace it, and that plaintiff

did not forfeit his right to recover this damage by accepting the price of excess of scrip so sold. That defendant is not liable to plaintiff for any supposed or real difference in the value between the price of the scrip necessarily sold, and the price paid by plaintiff thereafter to replace it.

The plaintiff asked the court to declare the law to be:

*First*—That before the defendant was authorized to sell the scrip deposited as collateral security for the payment of the note, demand for payment was necessary.

*Second*—That notice of the sale of said scrip to the maker of the note was necessary before said scrip could rightfully be sold.

*Third*—That said deposit was separable, no greater amount in value should have been sold than was sufficient to pay said debt.

*Fourth*—That if notice of the sale of said scrip was not given to the depositor, and the scrip was sold, the plaintiff should recover herein, and the measure of damages, is the highest market value of said scrip, at any time from the date of sale to the trial, less the amount of the note.

*Fifth*—That if demand of payment and notice of sale are found to have been made, and it is found that such deposited scrip was separable, and that more of said scrip was sold than was necessary to pay said note, then the plaintiff should recover herein, and the measure of damages is the difference between the price for which said excess of scrip was sold, and the highest market value of said excess from the date of sale to the date of trial.

These declarations were all refused except the third, which was given.

The plaintiff moved for a new trial, alleging these grounds:

*First*—Error in refusing to give the first, second, fourth and fifth declarations of law asked by plaintiff.

*Second*—Error in the finding of facts.

*Third*—Error in the declarations of law given on its own motion.

The motion was overruled and exceptions reserved.

The defendant asked the court to declare the law to be :

*First*—Under the contract sued on herein, on the non-payment of the debt, and the refusal of the plaintiff to pay the same on demand at maturity, the defendant had a right to collect all the collateral security pledged for the payment, and to apply the proceeds to the payment of the debt, and to pay the residue to the plaintiff.

*Second*—That defendant having sold the scrip and paid the debt out of the proceeds, and having paid over the residue to the plaintiff, which was accepted by him, such acceptance was a satisfaction of the sale and a waiver of any irregularity in the sale, which debars plaintiff from maintaining this suit.

Both these declarations were refused and exceptions saved.

Defendants motion for a new trial was based on :

*First*—Supposed error of the court in refusing to give the two declarations of law asked for by him.

*Second*—Because the court erred in the declarations of law given on its own motion.

*Third*—Because on the conclusions of law found by the court, the finding should have been for the defendant.

This motion was overruled and exceptions saved.

Each party took a separate bill of exceptions, but the evidence is not set out in either of them.

The defendant appealed to this court, and after the record was deposited here on his appeal, the plaintiff prayed a cross-appeal from the judgment of the court.

We will first advert to the questions arising on the appeal of Fitzgerald.

The court refused to declare as the law of the case: That under the contract the defendant had a right to sell all of the collateral security pledged, on refusal of the plaintiff to pay the secured debt on demand at the maturity of the note; but on its own motion, and also on the third declaration asked by plaintiff, declared the law to be, that if the deposit was separable, he had the right to sell so much of the scrip as was necessary to pay the amount of plaintiff's note and no more; and this forms appellant's first exception.

In *Olcott* v. *Bynum*, 17 Wall., 62, Justice Swayne, in treating of a sale, made under a deed of trust, containing express authority to sell all the property conveyed, says: "If enough of it to satisfy the amount due could be segregated and sold without injury to the residue, it would have been the duty of the mortgagees to sell."

In *Tatum* v. *Holliday*, 59 Mo., 428, a sale was made under a deed of trust, which contained a provision that in case of default, in payment of the secured note, the trustee should sell the property or a part thereof, to satisfy the same. The court says: "Where the property is susceptible of division, and will bring more by being divided and sold in separate parcels or lots, than by being sold in a body; or where by a sale of a part of the premises a sufficient amount can be realized to pay off the second debt, then it is the duty of the trustee to make the division and sell a portion accordingly, and if he fails in this, the sale will be held as invalid on the application of the party aggrieved."

In *Goode* v. *Comfort*, 39 Mo., 313 property which was susceptible of division, was sold under a deed of trust, as a whole and at a sacrifice, and the sale was set aside, although the amount bid did not pay the debt, and the deed required the trustee to sell the property or so much thereof as will be necessary for that purpose.

In *Howard* v. *Ames*, 3 Met. (Mass.), 311, Ch. Justice Shaw in delivering the opinion of the court says: " Where property, real or personal, is conveyed by a debtor to his creditor with a power to sell and dispose of it, and apply the property to the payment of the debt, the creditor in executing such power becomes the trustee of the debtor, and is bound to act *bona fide*, and to adopt all reasonable modes of proceeding in order to render the sale most beneficial to the debtor, like any other agent, factor or trustee to sell. Like other trustees he cannot himself directly become the purchaser, or do the same thing through the agency of another."

These principles merit our approbation and we think should apply to sales of pledged property, by the pledgee, when authorized by the terms of the deposit, to sell the property pledged to pay the debt, and perhaps for stronger reasons than exists in cases of mortgages with power of sale, or deeds of trust, because a pledge of personal property to secure a debt, unlike the securities above alluded to, does not pass the legal title to the pledgee, he simply holds the possession of the property as a security for the debt, and when the power to sell is conferred, acts strictly for the pledger, in whom the legal title still vests.

We accordingly find in the books treating of pledges, principles similar to the doctrines in the Massachusetts case cited.

Thus, 2 Parsons Cont., 120: " The pledgee should not buy the pledge himself, and he should take all proper and customary precautions in the time and manner of sale, of notice or advertisement and the like, to protect effectually the pledger's interest and property. Nor should he sell more than enough to pay his debt, if the pledge consists of parts ; and if the proceeds do not pay his debt, he may sue for the surplus."

And in Edwards on Bailments, p. 236, it is said : " The rule is, that the pawnee who sells the pawn or collects on the collateral

security entrusted to him, is entitled to receive or recover the full amount of the chattels or choses in action deposited in pledge and apply the proceeds, first to the payment of his debt, that satisfied, the balance belongs to the pawnor. * * * There are cases, however, when he cannot collect beyond the amount of his debt." See also Story's Bailment, 314 ; Tyler Usury, Pawns, and Pledges, 600 ; *Whitlock* v. *Heard,* 13 Ala., 778.

The pledgee acquires no interest in the property, except as a security for his debt, and where a power of sale is granted in the contract, it is merely for the purpose of collecting the debt, and when the subject is divisable and a part sufficient to pay the debt, there is no reason why more should be sold.

There was no error in overruling the first declaration of the defendant, or in giving the third declaration for plaintiff, nor in the declaration given on its own motion by the court on this point, and we concur with the Circuit Court in declaring as the law : That for the damage done to the plaintiff by selling more scrip than was necessary, defendant is responsible.

The second declaration asked by the defendant, was to the effect that by accepting the proceeds of the surplus scrip sold by the defendant, the plaintiff ratified the sale, waived all irregularities and debarred himself from maintaining this suit.

The court refused to make this declaration, but did declare the law to be, that plaintiff did not vitiate his right to recover the damages he had sustained by accepting the price of the excess so sold.

The case of *Hamilton* v. *The State Bank,* 22 Iowa, 306, is cited by counsel, to sustain the exception to this ruling.

We think the case is distinguishable from the one at bar.

In that case Hamilton had pledged some United States bonds with the bank to secure over drafts, but gave at the time no power to sell, and the bank acquired no authority to sell, except

of course under the law of pledges. Under that law the defendant bank could not have sold the collaterals without demand of payment, notice of sale, and only at public sale.

Hamilton became greatly in arrears to the bank, much more than the value of the property pledged. The agent of the bank applied to him for authority to sell the securities pledged, and did sell them, by the direction and express consent he claimed to have received from Hamilton, and passed the proceeds to his credit on the 5th April, 1865, leaving a large balance due the bank. Hamilton made some payment April 6th, leaving a small balance to his credit, which was placed on his pass-book and which he drew out on the 5th May; on the 22d January, 1867, sixteen and a half months after he drew out the balance, he demanded the bonds and brought suit.

It was not pretended that the sale was made in accordance with the law of pledges, or under the contract of bailments, but the bank claimed that the sale was made by the direction and express consent of the plaintiff, given on the day of sale; this was denied; and upon the trial of this issue, the jury were instructed: That if they found that the sale of the bonds was made by the consent of the plaintiff; or if they found that he accepted the credit on his bank account, although he did not know thereof until after the sale, then he cannot complain that the sale was not made in accordance with the law of pledges, or at most not until he could show that the bonds did not realize the full, fair market value of the same.

In the case at bar, if it was claimed that the sale of all the scrip was made by Blocher's direction or with his consent, then his acceptance of the money, without objection, would have been a circumstance for the jury to consider as evidence of such agreement.

This case is just what the Iowa case was not, a sale made under the authority of the contract of bailment; no subsequent agreement of Blocher to the sale was sought. The defendant deemed he had the right to sell all the scrip under the contract. Blocher's acceptance or non-acceptance after the sale was not evidence of the legal effect of the contract.

The contract of bailment was in writing, and must be construed by its terms, the after construction of neither party can control its legal effect, although if the terms of the contract were in doubt, the construction placed upon it by both parties, would be material; or if, as in the Iowa case, there was a dispute about the terms of the contract, the acts of the parties, the one in selling and the other in receiving proceeds of the sale without objection, would be evidence of the terms of the contract.

Was the acceptance of this money a waiver of Blocher's right to sue for the damages he sustained?

A party may in most cases waive a strict performance of a contract, or surrender any right he possesses, and such waiver, or surrender may consist of acts in pais, " but this never occurs unless intended, or where the act relied upon ought in equity to estop the party from denying it." · *Diehl* v. *Adams Co., etc.*, 58 Pa. St., 452.

The whole question turns on Blocher's intention in accepting the money from the defendant. See *Vroman* v. *Darrow*, 40 Ill., 171, and it must be clearly and explicitly shown. *Johnston* v. *Yale*, 19 La. An., 212.

In *Ingram* v. *Hartz*, 48 Pa. St., 380, it was decided: " That the receipt by a tenant of the balance remaining in the hands of the bailiff, above rent and costs from the proceeds of an invalid distress will not estop him from a denial that there was rent in arrear, or of the legality of the warrant, in an action of trespass brought to recover damages therefor. That the receipt of the

surplus was only a satisfaction of damages *pro tanto*." In receiving the balance the court says the tenant did no act requiring him to rely upon the distress, he acquired no benefit by the sale of his own property. His right to the proceeds, not needed to discharge the rent, did not rest upon the trespass committed by his landlord, and the bailiff. It was simply a return to him of what belonged to him before, in a converted state it is true, but not the less his, the return was a duty which devolved on the bailiff, and when he tendered the sum and it was accepted he could not fairly imply that his trespass had been condoned.

Upon what principle can it be said Blocher is estopped from claiming damages for an illegal sale of his property, by accepting the proceeds of the sale.

Not upon the principle of an equitable estoppel *in pais*, " for that doctrine proceeds wholly on the theory that the party to be estopped has by his declarations or conduct misled another to his prejudice, so that it would be a fraud on him to allow the true state of the facts to be proven." *Martin* v. *Zellerbach*, 38 Cal., 314.

Can it be said with truth that Blocher, by accepting the proceeds of the sale, after the same took place, induced defendant to make the sale, or misled him to suppose he had a right to make the sale.

" The principle underlying such estoppel, is that it would be a fraud in the party to assert what his previous conduct and admissions denied, when on the faith of that denial others have acted. And one who insists upon the acts of another as working an estoppel, must show that he acted upon the same, and was induced thereby to do some act which would result in an injury if the other is permitted to gainsay or deny the truth of what he did. For it is a well settled principle in such cases, that no man can set up another's act, or declaration, as the ground of an

estoppel, unless he has himself been misled or deceived by such act or declaration." *Simpson* v. *Pearson*, 31 Ind., 5.

Finding no error in the judgment of the court against the appellant, we will now take up such of the points made on the cross-appeal, as have not been considered in discussing the questions arising on the first appeal.

The first point made is that demand for payment was necessary before the scrip could be legally sold.

The sufficient answer to this is, that the court found as a fact that the defendant's agent did demand the payment, and as the evidence was not preserved by the bills of exceptions, this finding is conclusive in this court.

This makes it unnecessary for us to pass upon the effect the word "fixed" in the note should receive, the promise was to pay thirty days (fixed) after date. We think, however, it will appear that in the cases where demand of payment has been held necessary, when notice of sale was waived, the debt was either payable on demand, or an indefinite credit had been extended. 2 Chitty on Conts., 670.

His second point is, that notice of the sale, to the maker, was required before the sale could rightfully be made, and his fourth point related to the measure of his damages in such case.

The right to notice was expressly waived in the contract of bailment, and cannot now be insisted on. *Mowry* v. *Wood*, 12 Wis., 419.

His third point was sustained by the court below.

His fifth point relates to the measure of damages sustained by a sale of more scrip than was sold, and the highest market value between the date of sale and date of trial.

The court overruled this point and declared as the law that the measure of damages was the difference between the price at which the scrip was sold and the price paid for plaintiff to replace it.

The suit was for damages he had sustained by the illegal sale of the property; he accepted the proceeds, and re-purchased, in the absence·of any showing, we presume in a reasonable time, and this difference in price was the actual damage to him, and we see no reason why it should not have been the measure of his recovery.

If the proceeds of the illegally sold scrip.had not been tendered to him, and he was unable to replace the scrip, and therefor lost the advantage of a rise in the price of his property, his damages might have been as asked in the instruction, but he did accept the proceeds and repurchased the scrip at a loss of $45.44, and was thereby enabled to realize all the advantages by the appreciation of his property, he would have had, if defendant had returned it to him. His actual damages were very clearly the amount it cost him above that which he received for it, and this is not a case, we think, for more than compensatory damages.

We think there is no error shown in the record for.which the case should be reversed.

Chief Justice ENGLISH did not sit in this case.