# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT

OF THE

# TERRITORY OF UTAH.

LOUIS HYAMS and JOHN A. ERWIN, APPELLANTS, *v.*
SIMON BAMBERGER and O. J. SALISBURY,
RESPONDENTS.

1. TENDER IN WRITING.—SUFFICIENCY OF UNDER STATUTE.—2 Comp.
Laws, 1888, which declares that "an offer in writing to pay a
particular sum of money is, if not accepted, equivalent to the
actual production and tender of the money," does not have
the effect of an actual tender, unless made in good faith, with
ability to produce the money. But such a tender does not
deprive the creditor of the allowance of a reasonable time in
which to ascertain the amount due, and to determine whether
he will accept. A tender in writing under the statute excuses
the debtor from actually producing the money at the time, but
does not excuse any other act or requirement necessary to
make a valid tender.

2. PLEDGE.—EXTINGUISHMENT.—DAMAGES.—ABATEMENT.—The lien
of the pledgee is extinguished by a *bona fide* tender in writing
under the statute by the pledgor made before a valid sale of

iii

the pledged property, even though the tender is made after the maturity of the debt, and if the pledgee sells the pledged property after such a tender he is liable in trover for damages to the full value of the property without any abatement for the amount for which the property was pledged.

3. SALE OF PLEDGE PROPERTY. — WHEN VOID. — CONVERSION.— DISAFFIRMANCE.—*Semble:* A sale of the pledged property, upon notice, by the pledgees to themselves, even after the maturity of the debt, is not absolutely void, but only voidable at the election of the pledgors. A valid tender in writing by the pledgors of the amount of the debt even after such a sale, is a disaffirmance of the same and the sale is void; and the refusal of the pledgees to accept the tender renders them liable in conversion, discharges the lien of the pledge, and *semble* they must look to the personal responsibility of the pledgors for satisfaction of their debt.

(No. 431.   Decided March 22, 1894.   36 P. R. 202.)

APPEAL from the district court of the third judicial district, Hon. Chas. S. Zane, *Judge.*

Action by Louis Hyams and John A. Erwin against Simon Bamberger and O. J. Salisbury to recover $15,291.61 damages, for the alleged conversion of certain pledged notes and stock. Tried before T. J. Anderson, referee, who found that plaintiffs were entitled to a judgment for only $252.00, and that defendants were entitled to their costs. The report of the referee was confirmed and judgment entered accordingly. From the judgment and from the order overruling the motion for a new trial, plaintiffs appeal. *Reversed.*

To the facts stated in the opinion, the following may be added:

Plaintiffs borrowed $8,000 from defendants, and executed and delivered to defendant Salisbury their two notes of $4,000 each, which fell due on the 11th day of November, 1891, upon which was due on the 18th day of November,

1891, the sum of $8,748. At the time of making and delivering the notes to Salisbury, plaintiffs endorsed and delivered to Salisbury, as collateral security to the joint loan of Salisbury and Bamberger, three certain promissory notes of John Beck, aggregating the sum of $14,719, secured by 2,000 shares of stock of the Bullion-Beck & Champion Mining Co. Plaintiffs' notes fell due on the 11th day of November, 1891, and no extension of time was granted by Salisbury for payment. On the 16th day of November, 1891, Salisbury, by his agent, gave notice to the plaintiffs that he would sell the Beck notes and stock securing the same on the 18th day of November, 1891, at 10 o'clock A. M. of said day, at room 30, Hooper block, Salt Lake City, Utah, and upon the 17th day of November, 1891, left similar notices with the banking institutions of Salt Lake City. On the 18th day of November, 1891, at 11 o'clock A. M., Salisbury, through his agent, sold the Beck notes and mining stock securing the same at the place designated in the said notices and in pursuance thereof, and, receiving no bids for the Beck notes separately, offered the three notes together, and the defendant Simon Bamberger bid the sum of $9,000. Bamberger purchased the notes for himself and his co-defendant, Salisbury. On the same day Salisbury served a statement on the plaintiffs, showing that after deducting the amount due on plaintiffs' notes, $8,748, from the amount received for the sale of the Beck notes and stock, $9,000, there was a surplus of $252, which he thereupon tendered; that plaintiffs refused the same. Upon the 18th day of November, 1891, after the sale of the Beck notes and stock, plaintiffs made a tender in writing to defendants of $8,748 for the purpose of redeeming the Beck notes and stock deposited as collateral security to their own two notes of $4,000 each; that defendants refused the offer; that on the 19th day of November, 1891, plaintiffs, by their attorneys, served a

notice upon the defendants that they elected to treat the sale of the Beck notes and stock as a conversion of the same, and on the same day brought this action.

*Messrs. Jones & Schroeder,* for appellants.

The value of the Beck notes at the date of conversion depended not upon the opinion of witnesses as to their value, but upon the fact whether or not at said date Beck was solvent or insolvent, his honesty, integrity and willingness to pay. *Patten* v. *Merchants' Bank,* 28 N. Y. 641; *Rose* v. *Lewis,* 10 Mich. 483; *Whitten* v. *Wright,* 34 Mich. 92. The law presumes the solvency of every man until the contrary is proved by positive testimony. *St. John* v. *O'Connell,* 7 Porter (Ala.), 466; *Latham* v. *Brown,* 16 Iowa, 118; *Robbins* v. *Packard,* 31 Vt. 570; *Am. Ex. Co.* v. *Parsons,* 44 Ill. 317; Jones on Pledges, § 652. Plaintiffs had indorsed the Beck notes and were liable thereon for their face value. *Decker* v. *Mathews,* 12 N. Y. 313; *Robbins* v. *Packard,* 31 Vt. 569; *Thayer* v. *Manley,* 73 N. Y. 305. A tender of the whole amount of the debt secured, discharges the lien of the pledge and pledgee is liable in damages for the full value of the property without any abatement. Jones on Pledges, § 543; *Ball* v. *Stanley,* 5 Yerger, 196; *Mitchell* v. *Roberts,* 17 Fed. R. 776; 1 Suth. Dam. (2 ed.) 277. An offer to return the goods after conversion is of no avail. 3 Suth. Dam. 529; *Norman* v. *Rogers,* 29 Ark. 369; *Savidge* v. *Perkins,* 11 How. Pr. 23; *Haumer* v. *Wilsey,* 17 Wend. 721. The court erred in allowing defendants judgment for costs, as they did not deposit the amount tendered with the court. 2 Comp. Laws 1888, § 3692.

*Messrs. Rawlins & Critchlow,* for respondents.

The true value of the depreciated stocks and notes is

their cash value in the market at the time of the transfer. *Bank* v. *Donaldson*, 16 Pa. St. 179. Damages in trover are assessed on equitable principles, and defendants should be allowed to abate or recoup to the amount of the debt due them from plaintiffs on their notes. 3 Suth. Dam. 527; *Fisher* v. *Brown*, 104 Mass. 259; *Wheeler* v. *Pereles*, 43 Wis. 332. The contention that a tender of the whole amount of the debt secured, if refused, discharges the lien, follows only on a tender good in every particular, made on the very day when it should have been made, the law day. Jones on Pledges, 542-545; *Perre* v. *Castro*, 14 Cal. 530; *Himmelmann* v. *Fitzpatrick*, 50 Cal. 650; Jones on Mortgages, §§ 891-2 and 3.

BARTCH, J.:

This is an action in trover to recover damages for the wrongful conversion of three promissory notes, secured by 2,000 shares of stock of the Bullion-Beck & Champion Mining Co. The notes were made by John Beck in favor of the plaintiff Hyams. The plaintiffs, in substance, allege that they were the owners of the notes on the 18th day of November, 1891; that two of them were for $5,000 each, and one for $4,719.20, bearing interest at 7 per centum per annum, and secured by the 2,000 shares of stock which were in escrow in the State Bank of Utah, to be sold at the request of the legal holder upon default in payment being made; that they were entitled to the immediate possession of the notes and stock; that on the said day the defendants, being in possession of the same, unlawfully disposed of and converted the notes and stock to their own use, to the plaintiffs' damage in the sum of $15,291.61. The defendants deny the allegations of the complaint, and, in substance, aver that on the 11th day of May, 1891, the plaintiffs made and delivered to the defendant Salisbury two notes, each for the sum of $4,000, due November 11,

1891, and, as security for the same, delivered the Beck notes and stock mentioned in the complaint; that each of the notes of plaintiffs expressed, upon its face, that the collateral security was deposited with defendant Salisbury, with authority to sell the same at public or private sale, at his option, and without notice or demand, on default in the payment of plaintiffs' notes; that any surplus arising from such sale should be returned to plaintiffs; that the plaintiffs refused and neglected to pay their notes at maturity, which was on the 11th day of November, 1891; that on the 10th day of November, 1891, defendant Salisbury served notice upon the plaintiffs and the various banks and financial institutions of Salt Lake City that he would sell the securities at 11 o'clock in the forenoon of the 18th day of November, 1891, designating the place of sale; that at the time and place designated in the notice he caused the securities to be sold; that the securities were sold at public vendue to defendant Bamberger for $9,000, he being the highest bidder, and the purchase being made jointly for himself and defendant Salisbury; that the amount due the defendants on plaintiffs' notes was $8,748; that thereupon the balance of the purchase price, with plaintiffs' notes, was tendered to them, and acceptance thereof refused; that the sale was fairly made, and the price received was the full cash value of the securities; and that thereby they became the owners of the securities, and were ready and willing to deliver to the plaintiffs the balance of the purchase price, and their notes.

It appears from the evidence that the transactions between the plaintiffs and defendants in relation to the making of the notes, delivery of the securities, default in payment, sale of the securities, and tender of the balance and notes, occurred substantially as alleged in the answer. It further appears from the evidence and stipulation of

counsel that, on the day previous to the date of maturity of plaintiffs' notes, defendant Bamberger informed plaintiff Hyams that he must have the money when due, and a few days afterwards defendant Salisbury also insisted on payment; that notice of sale was served on the plaintiffs on the 10th, and the securities sold on the 18th, of November, 1891; and that, after the sale had taken place, plaintiffs offered, in writing, the amount of their notes to the defendants for the purpose of redeeming the securities, but offered no money. The evidence is conflicting on the question of the refusal of the tender. The plaintiffs' testimony tends to show it to have been a positive, and that of the defendants a conditional, refusal; the defendants taking time for consideration, there being no money in sight. It is clearly shown, however, that on the next day the defendants gave notice of acceptance, and again on the following day, each notice of acceptance being coupled with the proviso that the money be paid within the next banking day; and that to all of which notices the plaintiffs paid no attention.

The case was tried before a referee, who found, substantially, the following facts: That the plaintiffs on May 11, 1891, borrowed of the defendants $8,000, and executed therefor, to defendant Salisbury, two notes of $4.000 each, on which notes there was due and unpaid, on the 18th of November, 1891, the sum of $8,748; that, as collateral security for the joint loan, the plaintiffs delivered to the defendants the Beck notes and stock; that on the 18th of November, 1891, the plaintiffs tendered to the defendants the sum of $8,748, in payment of their notes; and that the defendants refused to accept the tender, and to deliver the securities to the plaintiffs. He also found that the notices above mentioned were given, and a tender of the surplus was made, by the defendants; and that the fair market value of the Beck notes and stock collateral

thereto was, on the 18th of November, 1891, $9,000. As a conclusion of law from these facts, the referee found that the plaintiffs, on the 18th day of November, 1891, after the tender and demand for the notes, were the owners of the collateral notes and stock, subject to the lien in favor of the defendants for the sum of $8,748, and were entitled to the possession of said notes; that the defendants, by the wrongful refusal to comply with the demand of the plaintiffs for their possession, unlawfully converted the same to their own use; and that the measure of plaintiffs' damages was the value of the property converted, which was found to be $9,000, less $8,748 lien thereon, or $252, for which sum he rendered judgment in favor of plaintiffs. The defendants having tendered the plaintiffs the balance thus due before trial, and they having refused it, the referee gave judgment in favor of the defendants for their costs.

It will be observed, from an examination of the pleadings, evidence, and findings of the referee, that the important question to be determined in this case is the sufficiency and effect of the tender made by the plaintiffs to the defendants. The tender was made in writing, under section 3964, Comp. Laws 1888, which provides as follows: "An offer in writing to pay a particular sum of money, * * * is, if not accepted, equivalent to the actual production and tender of the money." Ordinarily, where a party makes a tender, independently of the statute, he must actually produce the money to the creditor. It must be in sight, capable of immediate delivery, and the creditor be allowed a reasonable time to determine the amount due, and to decide whether he will accept. A tender in writing under the statute is "equivalent to the actual production and tender of the money." To have this effect, however, the party tendering must have the ability to produce it, and must act in good faith. Nor does such a

tender deprive the creditor of the allowance of a reasonable time in which to ascertain the amount due, and to determine whether he will accept; and if he accept, and the debtor fails to produce the money, his tender will be of no avail. *Startup* v. *McDonald*, 46 E. C. L. 623; *Monayhan* v. *Moore*, 77 Am. Dec. 483; *Proctor* v. *Robinson*, 35 Mich. 284; *Smith* v. *Walton*, 5 Houst. 141; *Shugart* v. *Pattee*, 37 Iowa, 422. Where a person makes a tender in writing, the statute excuses him from actually producing the money at the time of making the tender, but it excuses no other act or requirement on his part which would be necessary to make a valid tender, independently of the statute. To hold otherwise would be to turn the statute, which was intended as a mere convenience, into an instrument of fraud to hinder and delay creditors in the collection of their claims. We have grave doubts as to the sufficiency of the tender in view of the facts and circumstances as they appear from the record, but as there appears to be some conflict in the evidence on this point, and from the fact that there is another question which is decisive in this case, even if the tender be good, it is not deemed necessary to determine whether the findings of the referee should be set aside.

Conceding then, for the purpose of this decision, that the tender was sufficient, the question is, what was its effect on the securities of the defendants? Did it discharge the lien of the pledgees, and leave them in the same position as if no securities had been pledged? Counsel for appellants contend that such was the effect,—that, if a valid tender be made, the lien is extinguished and gone forever. In such event the pledgee, upon refusal of the tender, would have no remedy except his action for the debt against the pledgor. Counsel for respondents insist that such result follows only upon a tender, good in every particular, made on the very day when the debt is due,

—the law day; and this position is sustained by authority in cases where the controversy grew out of mortgage securities, and 'is supported by the authorities cited by counsel. But is this so as to pledges of personal property? At common law a mortgage was a conveyance to the mortgagee upon condition that, if the debt were paid by the mortgagor on the day specified, then the conveyance would be void, but, if he failed to so pay, then the title to the property would become absolute in the mortgagee. This was the *mortunum vadium*, or dead pledge, and the mortgagee was entitled to immediate possession unless it was agreed that the mortgagor should hold the property until the day of payment. The essential parts of the mortgage were the conveyance and defeasance, and thereby the mortgagee acquired the right of possession and title to the land, subject only to be defeated upon the mortgagor paying the debt on the day named. On failure of such payment, the mortgagee, if not in possession, could immediately enter, without any possibility at law of being thereafter evicted by the mortgagor. If, however, the debt was paid, or a valid tender thereof made, on the day named, then the conveyance became void, and the property was discharged of the incumbrance. A tender made and refused on the law day discharged the property of the lien as effectually as if payment had been actually made. This, however, did not extinguish the debt, and the mortgagee had his remedy at law against the mortgagor. Littleton stated the law as follows: " And note that in all cases of condition for payment of a certain summe in grosse touching lands or tenements, if lawful tender be once refused, he which ought to tender the money is of this quit, and fully discharged forever afterwards." And Coke, commenting, said: " This is to be understood that he that ought to tender the money is of this discharged forever to make any other tender; but, if it were a dutie

before, though the feoffer enter by force of the condition, yet the debt or dutie remaineth. As if A. borroweth a hundred pound of B. and after mortgageth land to B. upon condition for payment thereof; if A. tender the money to B., and he refuseth it,—A. may enter into the land, and the land is freed forever of the condition, but yet the debt remaineth, and may be recovered by action of debt." This exposition of the common law upon this question appears to be supported by the weight of authority at the present day. Co. Litt. p. 209*b*, § 338; 1 Jones, Mortg. § 886.

In some of the states, a tender of the amount due on a mortgage, made after the law day, extinguishes the lien the same as a tender at common law, made on the law day. The property is thereby discharged from the lien, and the mortgagee is left to his remedy against the mortgagor the same as though no mortgage had existed. To have this effect, it would seem not even necessary to bring the money into court, or to show that the tender has since been kept good. This appears to be the rule in New York and Michigan. 1 Jones, Mortg. § 893; *Kortright* v. *Cady,* 21 N. Y. 343; *Jackson* v. *Crafts,* 18 Johns. 110; *Moynahan* v. *Moore,* 9 Mich. 9; *Potts* v. *Plaisted.* 30 Mich. 149. The rule laid down by these authorities appears to be founded upon the doctrine that the mortgage is merely a pledge of the property, the ownership of which remains in the mortgagor, and that the tender, after default, produces the same result as a tender in the case of a pledge of personal property; which is a departure from the common-law doctrine that a mortgage is a conveyance to the mortgagee in fee, subject to be defeated by performance of the condition by the mortgagor. The general rule adopted by the weight of authority, from the time of Lord Coke down to the present, appears to be that at common law a tender of the debt, secured by mortgage,

made after the day named for payment, does not operate to discharge the mortgage. This rule is founded on the ground that, upon a breach of the condition of the mortgage, the mortgagee becomes the owner of the property in fee, and thereafter he is not required to accept the tender and reconvey the property to the mortgagor. In equity, however, the mortgagor has a right to redeem at any reasonable time, and a tender of the debt after breach of conditions, while it will not discharge the mortgage, yet it will have the effect, so long as it is kept good, to protect the mortgagor from cost, and stop interest. The right of redemption was established by the courts of equity, and from equitable principles was derived the modern common-law doctrine. At law, a mortgage is an estate; in equity, a security merely. The mortgagee has his legal, and the mortgagor his equitable, remedies. As a result, these equitable principles have materially softened the ancient rigor of the common law, and it appears now to be the settled doctrine that the mortgagor in possession is, at law, the legal owner both before and after a breach of the condition. The mortgagee not only has a lien, but a transfer of the property itself, which gives him a standing at law as well as in equity. 2 Bl. Comm. 158, 159; 4 Kent, Comm. 193; 1 Jones, Mortg. §§ 11, 667; *Currier* v. *Gale,* 9 Allen, 522; *Jones* v. *Horn* (Ark.), 9 S. W. 309; *Perre* v. *Castro,* 14 Cal. 519; *Mitchell* v. *Roberts,* 17 Fed. 776; *Himmelmann* v. *Fitzpatrick,* 50 Cal. 650; *Shields* v. *Lozear,* 34 N. J. Law, 496; *Rowell* v. *Mitchell,* 68 Me. 21; *Gray* v. *Jenks,* 3 Mason, 521, Fed. Cas. No. 5,720; *Crain* v. *McGoon,* 86 Ill. 431.

The next question is, does the doctrine in relation to mortgage security apply to a pledge or bailment of personal property? At common law a pledge is a bailment of personal property, as a security for some debt or engagement. Goods and chattels, money, debts, negotiable

instruments, and the like, may be the subject of it. When the debtor delivers the property to the creditor, the pledge is complete. Delivery and possession are essential elements. A pledge differs from a chattel mortgage in that it becomes merely a special property in the hands of the pledgee, and does not pass the legal title, and from a mortgage of real estate in that there is no conveyance. In the case of a pledge, the debtor continues to be the owner of the property after delivery, subject to the lien of the creditor. In the case of a mortgage, the title passes to the creditor, subject to be defeated upon performance by the debtor of the condition subsequent. To constitute a pledge, no written contract is necessary, while a mortgage must always be in writing. The pledgee has a lien on the property pledged, so long as he retains possession, until the debt is paid, but generally, whan he parts with the possession, his lien is extinguished. The pledgor has a right to redeem at any time after maturity, and until a valid sale be made. Failure to pay the debt at maturity works no forfeiture. If it be not redeemed within the time stipulated for the payment of the debt, and default be made by the debtor, then the pledge may be sold by the creditor, and in this respect the pledge differs from an ordinary lien, where the creditor has no right of sale. The pledgor retains the legal title to the property until it is divested by sale on due notice or by foreclosure in equity. 2 Pars. Cont. 112; 2 Bl. Comm. 396; Story, Bailm. §§ 287–308; Jones, Pledges, §§ 7, 80; Jones, Chat. Mortg. § 7. It is clear that at common law the pledgee has merely a special property in the pledge, which gives him a right of possession, and a lien which may be extinguished by payment of the debt before valid sale, the same as payment of the mortgage debt on the law day extinguishes the mortgage. It follows, therefore, that a

valid tender made by the pledgor at any time before sale will produce the same effect.

This appears to be the settled law, and the rule seems to be founded in justice and fair dealing, for it would be difficult to conceive of any good reason why the creditor should be allowed to refuse payment of the money when tendered in good faith after maturity, and yet retain the pledge, or a lien upon it, for the debt. The mere caprice of the creditor might result most disastrously to the debtor through his inability to free his property from the debt. Nor would the slow process of a bill in equity afford an adequate remedy, for, on a bill to redeem, interest and costs would accumulate unless the debtor kept good the tender, in which event he would be deprived both of the use of his money and property until the end of the suit. On the other hand, the creditor who refuses payment when lawfully tendered reaps simply the reward of his own folly. His lien is gone, but the debt remains, for which he has his right of action against the debtor. After tender and refusal, the pledgee will be liable for injury to the pledge. Story, in his work on bailments (section 341), states the law as follows: "The pawnee makes himself responsible for all losses and accidents, whenever he has done any act inconsistent with his duty, or has refused to perform his duty. If, therefore, the pawner makes a tender of the full amount of the debt for which the pawn is given, and the pawnee refuses to receive it, or to deliver the pledge, the special property which he has in it is determined, and he is henceforth treated as a wrongdoer, and the pawn is at his sole risk." And Jones, in his Treatise on the Law of Pledges (section 543), says: "A creditor, by refusing a tender properly made of the amount of a debt secured by a pledge, converts it to his own use. He makes it his own so far as to run the chance of any de-

preciation that may afterwards occur." And again, in the same section, he says: "Upon the pledgee's refusal of a tender of the whole amount of the debt secured, the debtor may maintain trover for the property, and he is entitled to damages to the full value of the property, without any abatement for the amount for which the property was pledged. The creditor must resort to an action to recover the debt. The refusal of the tender discharges the lien upon the property and places the parties, in relation to the property, in the same position as if the debt had been paid and no pledge had ever existed." Schouler, Bailm. § 254; Suth. Dam. § 277; *Van Husan* v. *Kanouse,* 13 Mich. 303; *Ball* v. *Stanley,* 5 Yerg. 199; *Mitchell* v. *Roberts,* 17 Fed. 776; *Norton* v. *Baxter,* 41 Minn. 146, 42 N. W. 865; 1 Bac. Abr. tit. "Bailment" (b), p. 610; *Ratcliff* v. *Davis,* Yelv. 179; *Loughborough* v. *McNevin,* 74 Cal. 250, 14 Pac. 369, and 15 Pac. 773; *Jones* v. *Hart,* 2 Salk. 441; *Coggs* v. *Bernard,* Id. 522, note; *Ratcliff* v. *Davies,* Cro. Jac. 244.

In the case at bar, the pledgors allowed the day of maturity to pass without payment. The pledgees upon notice sold and bought the pledged property. While the sale to themselves was not absolutely void, yet it was voidable. The pledgors could elect to affirm it or not, as they chose. If they had affirmed the sale, then it would have been valid for all purposes, and the only liability on the part of the pledgees would have been to credit the pledgors with the proceeds, or account to them therefor. As, however, they elected to disaffirm the sale, it must be held void, the same as though no sale had taken place, and, therefore, as creating no liability against the pledgees, who, upon such disaffirmance, held the property the same as before the sale. Story, Bailm. § 319; Schouler, Bailm. § 230; *Hamilton* v. *Bank,* 22 Iowa, 306; *Griggs* v. *Day* (N.

Y. App.), 32 Am. Rep. 725; *Killain* v. *Hoffman*, 6 Ill. App. 200; *Bryan* v. *Baldwin*, 52 N. Y. 232. After the sale, the pledgors made a tender in writing, which the referee found was valid, and, therefore, upon the refusal of the pledgees to accept, they were guilty of conversion, their lien was discharged, and thereafter they could only look to the personal responsibility of the pledgors for satisfaction for the debt. The referee could not lawfully deduct the amount of the debt from the amount of the damages, especially when no such demand was made in the answer.

Having reached this conclusion, and, as before intimated, having grave doubts as to the sufficiency of the tender, we do not deem it necessary to pass upon the question of the measure of damages, as the case must be reversed and remanded, with directions to the court below to grant a new trial, with leave to the parties to amend their pleadings, if they deem it necessary. And it is so ordered.

SMITH and MINER, JJ., concur.