MEYER BROTHERS DRUG COMPANY *v.* MATTHEWS.

Opinion delivered July 6, 1901.

PLEDGE—UNLAWFUL ASSIGNMENT—CONVERSION.—Where a note was pledged under an agreement that it should not be assigned, and the pledgee, by an unauthorized assignment, put it out of his power to restore the note upon payment or tender of the debt secured, he is liable to an action for its conversion, without a previous demand and tender of performance by the pledgor, though the damages to be recovered by the latter will be reduced by the amount of the debt for which the note was pledged.

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

### STATEMENT BY THE COURT.

On the 11th day of January, 1899, Emeline Matthews brought suit against the Meyer Brothers Drug Company and the Moffitt-West Drug Company, Missouri corporations, alleging that on the 4th day of January, 1899, she was the owner of a promissory note, dated March 4, 1898, made by W. B. Williams to D. L. Cramer, or order, for $2,000, payable $50 per month on each successive month, beginning with the 4th day of April, 1898, bearing interest from date at 8 per cent. per annum, the same being secured by a mortgage on the printing plant of the "Free Press" at Stuttgart, Arkansas; that the note, indorsed in blank by Cramer, was delivered to plaintiff; and that defendants, on the 4th of January, 1899, wrongfully took the note and mortgage from her, and converted them to their own use, to her damage in the sum of $1,845, for which she prayed judgment. Defendants answered, denying the wrongful taking and conversion. Subsequently, by amendment to their answer, they further alleged that, the plaintiff being indebted to Meyer Brothers Company in a large sum, it brought suit against her, on the 10th day of January, 1899, in the circuit court of St. Louis, that being a court of competent jurisdiction, for the recovery of the debt, and sued out an attachment against her, which was levied on the note mentioned in the complaint; that judgment was obtained April 24, 1899, and the note was condemned to be

sold in satisfaction of it; that it was so sold and bought in by the Meyer Brothers Company, said proceedings being all according to the laws of Missouri. Plaintiff filed an amendment to her complaint, alleging that the defendants had trumped up the proceeding in St. Louis in the attachment suit of which plaintiff had no notice, and denying that she was indebted to the Meyer Brothers Company on the 10th of January, 1899. Then, by answer to amendment of the complaint, the defendants denied that the proceedings in St. Louis were feigned, fraudulent or collusive.

Plaintiff then amended her complaint by filing interrogatories, which elicited the following answers:

W. G. Sluter: "I am the confidential man and manager of the Moffett-West Drug Company. I know W. D. Matthews. Our company turned over to the Meyer Brothers Drug Company a promissory note, made by W. B. Williams, for $2,000, payable to the order of D. L. Cramer. Soon after that our house wrote to Matthews the following letter: 'January 7, 1899. W. D. Matthews, Springdale, Ark. Dear Sir: We have your telegram, which we answered as follows: 'Meyer Brothers Drug Company called yesterday, and paid our cashier $175, and the papers are in their hands. See letter.' After you left, Mr. Sluter, who has been on the sick list, turned the papers over to the cashier, with the memorandum that $175 was to be paid us in cash or good secured notes, and that he was to surrender the papers to the party paying us, or to the bank, after deciding the notes good which we were to be given in settlement in case the cash did not come. Our cashier did not question the transaction with Meyer Brothers, and, if you had known when you left our office that you were going to negotiate with Meyer Brothers for the $175, you ought to have said something about it. As it is now, it is impossible for us to send the papers to the Stuttgart Bank, but we telephoned Meyer Brothers the contents of your message to them. They did not say whether they would send down or not. Simply said they would write you. Yours truly, Moffett-West Drug Company.'

"Our business was with W. D. Matthews, as agent for his wife, the plaintiff, who was carrying on business under the name of the Matthews Drug Company, at Springdale, Arkansas. As the purchase was partly on credit, he turned over to us as collateral security the note of W. B. Williams. I asked him who owned the Matthews Drug Company, and he said that his wife was the owner."

T. Meyer, answering plaintiff's interrogatories, said: "I am adjuster of delinquent accounts for Meyer Brothers Drug Company. I know W. D. Matthews. The note mentioned by Mr. Williams is not in my possession. Meyer Brothers got it from Moffett-West Company. Alex Block had it the last that I knew of it. Meyer Brothers held notes signed by Emeline and W. D. Matthews, and the Moffett-West Company held the note on W. B. Williams as security for a debt due them from Emeline Matthews. Acting for Meyer Brothers, I bought this claim against her, which purchase carried with it the Williams note thus held as collateral."

Bill of exceptions was signed and filed, showing, in addition to the answers to interrogatories above mentioned, the following testimony: W. D. Matthews, for plaintiff: "I have lived in Little Rock since the 1st of January. Before that I lived in Springdale six or seven months. Before that I lived in Stuttgart four years. I went there from Nebraska. Acting as agent for my wife, I went to the Moffett-West Drug Company, in May, 1898, and told them that I was going to move to Springdale, and that we were thinking of going into the drug business, and asked on what terms I could buy a stock of goods—$700 worth. They asked me how much I could pay down, and I said so much. They asked me how I could secure the balance, and I told them that Mrs. Mathews owned this note, secured by a printing office in Stuttgart, and offered to put it up as security for $375. I told them we had lost much money; that I owed Meyer Brothers; had paid them thousands of dollars; and that when I owed them less than $500 I had given them a mortgage on our home, worth $2,500, subject to a prior mortgage of $1,000. I paid the first $50 on the debt; but business got worse, and I could pay no more. The business was closed out. When I gave the note and mortgage to the Moffett-West Company, I told them that that was all that Mrs. Matthews had, and I put them up with the express understanding that they were not to pass out of their possession, and that, if Meyer Brothers should try to cause any trouble, they were to protect me, and they said they would. They took the note under those conditions. When I decided to take the newspaper here—the store at Springdale having been sold—there were not enough funds to pay for the plant, and I corresponded with Moffett-West to learn whether the balance that was due could be arranged for, and they said that it could. They had corresponded with Williams, who had bought the printing office. I went to St. Louis to see the Moffett-West

Company. I got there on the 5th of July last. I saw Mr. West first, and he told me to see Mr. Sluter. When he came in, I told him that Williams had made new notes of $25 each, payable to the Moffett-West Company, and that Mr. Cramer and Mr. Lewis had indorsed them. Sluter said it looked all right; but, having talked with Mr. West, he said he did not not like to take the mortgage then, but that he would look into the matter, and would fix it up if they were good. He looked up his reference, and said that Cramer had no rating, but that Cramer & Co. had. I told him to wire to Stuttgart at my expense. He sent a messenger, and asked me to come back in an hour or two. When I went back, I found Mr. Meyer there. After he was gone, I asked Mr. Sluter whether he had any connection with the note, and he said no, that he was there on another matter. He said, after Meyer went away, that he had not heard from his telegram, but that, if he had heard, he would not take the note. I told him that I could presume on Cramer's friendship; that I could put up collateral with him for $175, and that, if he would send the note down there, Cramer would pay the $175. He said he would do that, and wrote an order on the bank to deliver the paper to Mr. Cramer on payment. I wrote to Cramer, asking him to make the payment, inclosing the order, and saying that when I came back I would make him safe. In the morning I asked Sluter where the note was. He said they had it. Afterwards he said it was in the bank at Stuttgart. I said that that was funny. I went home Thursday night, and telegraphed Moffett-West Saturday morning, asking whether the note had been paid, notifying them that the note was sent them on the 15th of December. They answered: 'Meyer Brothers called yesterday, and paid the $175, and the note was surrendered to them. See letter.'" (Referring to letter copied above.) On the 5th or 6th of January last the value of the Williams note was $1,845.

*Rose, Hemingway & Rose,* for appellants.

There is a wide difference between a pledgee and a mere factor. Edw. Bail. § 277; 24 Ark. 22; Story, Bail. § 324. The pledgee may assign his interest in the pledge, and the assignee will stand in his place. Jones, Pledg. § 418. On an assignment the pledgor cannot maintain an action of trover against the pledgee. Edw. Bail. §§ 422, 266. The pledgee may transfer his interest in the pledge. Edw. Bail. § 266; 34 N. H. 35; 23 N. H. 38; 4 Watts, 414. A pawnee has a special property in the pawn which

he may assign. 78 Ill. 449; 13 Mass. 408; 57 N. Y. 1098; 99 Mich. 121. The pledgor must first tender the amount for which goods stand pledged before he can bring suit for possession. Jones, Pledg. § 571; *ib.* 422; Edw. Bail. 267; Colebrooke, Col. Sec. §§ 444, 344; 1 Q. B. 585; 3 Exch. 299; 93 U. S. 325; 36 N. Y. 395. That he who suffers a trifling injury to property can abandon it to the wrongdoer is a doctrine long since exploded. 15 Com. Bench, N. S. 330; 17 Q. B. 937; 65 Ark. 316; 1 Q. B. 585. Damages actually sustained can be recovered. 3 Exch. 301; 32 Ark. 742; Jones, Pledg. §§ 422, 425; Edw. Bail. § 267. A creditor may assign the principal debt together with a pledge which he holds to secure payment. 31 N. Y. 75; 28 Conn. 575; 25 Md. 271. The court erred in refusing defendant's third instruction. 172 U. S. 408. The ninth instruction asked by defendants should have been given. 7 Wall. 132; 23 How. 172; 13 Wall. 464. When the husband buys property, and takes title in the name of his wife, the law presumes a gift to the wife. 47 Ark. 111; 36 Ark. 586. How a witness may be impeached: 1 Greenleaf, Ev. § 462; *ib.* 421; Rapalje, Law of Witnesses, § 178; 46 Ark. 142; Bradner, Ev. 158, 717-720; Sand. & H. Dig., § 2959.

*Hill & Auten,* for appellee.

There never was any right of transfer in appellants. Schouler, Bailment and Carrier, § 225. The rights and liabilities of pledgor or pledgee may be restricted or enlarged by contract. Lawson, Rights, Remedies & Pr. § 1772; Jones, Pledg. § 421. The pledgee having put the property out of his power to restore it, tender would be fruitless. Lawson, Bail. § 62; 7 Hill (N. Y.), 497; 2 Comst. (N. Y.) 443; 4 Abb. Pr. 106; 3 Tex. 119; 4 Denio, 227; Story, Bail. 2 Ed. 349; 10 Johns. 472; 7 Hill, 497. At common law the pledgee in an action for the tort had the right to have his debt recouped in the damages. 15 Mass. 389; Story, Bail. § 315-349; 3 Hill, 171; 5 Hill, 76; 22 Wend. 155. Defendants could maintain trover or assumpsit, and in the latter recover the value. 13 Wend. 139-154; 20 Ark. 583; 22 Ark. 517; 74 Am. Dec. 604; 12 Gray (Mass.), 465. The contract pledging the note was not transferable. 2 Am. & Eng. Enc. Law, 1034, 1035, 1037; 127 U. S. 379; 18 Am. St. Rep. 180. And an assignment of the same was conversion. 80 Fed. 503. Demand was not necessary. 11 Ark. 249; 15 Ark. 225; 21 Ark. 422; 23 Ark. 417; 24 Ark. 264; 35 Ark. 169; 17 Ark. 154; 57 Ark. 270

HUGHES, J., (after stating the facts). "The pledgee may assign his interest in the pledge, and the assignee will stand in his place." Jones on Pledges (2d. Ed.), § 418. "The original contract of pledge is not put an end to by repledging the thing pledged, and therefore the original pledgor cannot recover it without having first paid or secured the amount of his debt secured by the pledge." *Id.* §§ 420, 422. That this is the law in the case of an ordinary pledge of property to secure the payment of a debt without limitation, the authorities fully maintain. The pledgee may stipulate that the pledgor shall not assign the pledge, for a special reason, and a contract to that effect between pledgor and pledgee is binding. *Id.* § 421. "An unauthorized sale of the pledge by the pledgee is not of itself a conversion. * * * His cause of action does not arise until he tenders payment and demands a return of the pledge, and the pledgee neglects or refuses to return it." *Id.* § 571. "If a pledgee by an unauthorized sale puts it out of his power to restore the property upon payment or tender of the debt secured, he is liable for its conversion, without a demand and tender of performance by the pledgor." *Id.* § 571a, and cases cited.

We think that the evidence clearly shows that the note of Williams to Cramer, and indorsed by Cramer to Emeline Matthews, was her property; that, as her agent, her husband pledged it to the Moffett-West Drug Company, as collateral to his note to them, upon the express contract and agreement that they were not to assign it; and that they were not to allow it to go out of their possession; and that, in violation of this agreement, the Moffett-West Drug Company parted with the possession of the Williams note, and turned it over to the Meyer Brothers Drug Company without authority; that this was done immediately after Matthews had made what appeared to be a satisfactory arrangement with them to settle the amount of his note to them, to which it was collateral, and without notice to Matthews. We think the evidence is sufficient to warrant the belief that Meyer Brothers Drug Company were aware of the condition of the pledge; that this unauthorized sale of the pledge resulted in placing it beyond the power of the pledgee to restore the pledge, upon payment or tender of the amount of the debt to secure which it was pledged; that it is legitimate to treat this as a conversion; and that appellee was not bound to pay or tender the amount of his debt before suit, under the circumstances. But, though appellee could sue before payment or tender, he is not released from the payment of his debt, to secure payment

of which the Williams note was pledged. We are therefore of the opinion that the judgment must be affirmed as to the Moffett-West Drug Company, with this modification, that the amount of the judgment is reduced by the amount which Matthews owned on the debt the Williams note was pledged to secure, and it is so ordered. But, as to the Meyer Brothers Drug Company, the judgment is reversed, and the cause is dismissed.

BATTLE, J., dissents from so much of the opinion and judgment of the court as relates to the Moffett-West Drug Company.