# MUSSER v. McCORNICK & CO.

No. 3433.   Decided October 6, 1920.   (192 Pac. 1052.)

1. CORPORATIONS—RIGHT OF PLEDGEE TO SELL STOCK WITHOUT NOTICE WAIVED BY INDEFINITE EXTENSION OF TIME. The right given pledgee of stock to sell it at any time without notice to the pledgor is one which can be waived, and which is waived, by granting pledgor an indefinite extension of time within which to sell himself, so that after such extension a sale by pledgee without notice to pledgor is a conversion thereof.

2. CORPORATIONS—UNAUTHORIZED SALE DOES NOT DEFEAT LIEN OF PLEDGE. Though an unauthorized sale of pledged stock makes the pledgee liable for the full market or actual value of the stock, not merely the sale price, though the sale was in good faith, it does not defeat the lien of the pledgee, so that the pledgor can recover nothing if the value of the stock was less than the amount secured by the pledge.

3. CORPORATIONS—TENDER BY PLEDGOR RELEASES PLEDGED PROPERTY. A tender of payment by the pledgor releases the lien of the pledge so that a sale by the pledgee thereafter renders him liable for the full market value of the stock without deduction of the lien.[1]

4. PRINCIPAL AND SURETY—SURETY NOT RELEASED BY INDEFINITE EXTENSION WITHOUT CONSIDERATION. A surety is not discharged by an indefinite extension of time granted to the principal debtor without consideration, since such extension does not bind the creditor to refrain from exercising his right to enforce payment at any time.

5. PRINCIPAL AND SURETY—SURETY NOT RELEASED BY EXTENSION REQUESTED BY HIM. A surety on a note is not released by an extension of time for payment of the note, where he not only knew of the extension, but where it was granted at his own request.

6. PRINCIPAL AND SURETY—SURETY HAS RIGHT OF INDEMNITY. An owner of corporate stock, who permitted it to be pledged to secure a note given by a corporation of which he was presi-

---

[1] *Hyams* v. *Bamberger*, 10 Utah, 3, 36 Pac. 202.

dent had a right of full indemnity against the corporation in case he was required to pay the note.

7. APPEAL AND ERROR—FINDINGS IN LAW CASE SUPPORTED BY SUB-STANTIAL EVIDENCE NOT DISTURBED. A finding by the trial court in an action at law supported by some substantial evidence cannot be disturbed on appeal, though the Supreme Court might find differently.

Appeal from District Court, Third District, Salt Lake County; *H. M. Stephens,* Judge.

Action by Joseph W. Musser against McCornick & Co., bankers. Judgment for defendant, and plaintiff appeals.

AFFIRMED.

*Ball, Musser & Robertson,* of Salt Lake City, for appellant.

*Pierce, Critchlow & Barrette,* of Salt Lake City, for respondent.

FRICK, J.

On July 11, 1914, plaintiff borrowed from defendant $1,500 and executed his promissory note for the amount. With other collateral security for the loan he delivered to defendant 1,000 shares of Sugar Centrifugal Discharger Company stock. On the same day the Intermountain Realty Company, a corporation of which plaintiff was president, borrowed from defendant $2,200 upon the company's note secured by an additional 5,000 shares of the same stock, which was the individual property of plaintiff. All of the stock was indorsed by plaintiff, and thereafter by agreement of the parties hereto, was placed in the name of George A. Smith, a nominee of defendant. By the terms of the notes express authority was given to the payee, or to any holder, to sell the collateral at public or private sale on default in the payment of principal or interest without notice or demand, and to apply the proceeds to the payment of the respective notes

and interest, taxes, and expenses of sale, holding the makers responsible for any deficiency.

Among other facts the court found: That on April 22, 1916, defendant duly demanded payment of said notes, and gave notice to plaintiff and to the Intermountain Realty Company that unless said notes were paid on or before April 24, 1916, defendant would proceed to sell the collateral and apply the proceeds of the sale upon said notes as provided therein. That on April 24, 1916, plaintiff called at defendant's place of business in Salt Lake City, Utah, and had a conversation with the cashier of the defendant, during which conversation it was represented by plaintiff to defendant that he was in a better position to dispose of the said 6,000 shares of stock of the Sugar Centrifugal Discharger Company than was the defendant, and it was then and there stated by defendant to plaintiff that he might sell said stock, and that defendant would not sell the stock on the day specified therefor. That plaintiff did not thereafter see defendant or any agent of the defendant, nor have any correspondence or communication in any form with said defendant with respect to said stock before October, 1917. That plaintiff made no payment to defendant on account of either of said promissory notes at the time of the said conversation, nor at any time, and no payments were ever made upon either of said promissory notes except those hereinafter mentioned. That plaintiff did not sell said stock on or after April 24, 1916, or at all. That on or about January 17, 1917, the defendant, without notice to, and without the knowledge or consent of, plaintiff, or of the Intermountain Realty Company, sold at private sale and delivered to one Eugene Roberts said 6,000 shares of stock of the Sugar Centrifugal Discharger Company for the sum of fifty cents per share, which at that time was the full market value thereof. That there was no evidence of any fluctuation in the value of said stock. That at the time of the sale of said stock plaintiff was still the owner thereof, subject only to the rights of defendant therein under said collateral notes as modified by the conduct and conversation of defendant on April 24, 1916, and by defendant's subse-

quent conduct; and at said time defendant was still and ever since has been the owner and holder of said notes, and there had been at that time paid thereon by way of interest or otherwise, the sum of $540 and no more, which said sum had been received by defendant at different times as dividends paid on said stock, and by defendant applied on said notes. That all of said $540 was indorsed by defendant as having been received and applied on plaintiff's individual note. That such indorsement was erroneously made, and it was stipulated by counsel for both parties that the fact was to be taken to be as though said sum had been applied in the following proportions, to wit:   Five-sixths thereof, or $450, upon the note of the Intermountain Realty Company, and one-sixth thereof, or $90, upon plaintiff's personal note.   That so applying said payment there was due and unpaid upon the Intermountain Realty. Company note at the time of said sale the sum of $2,190 and upon plaintiff's personal note the sum of $1,710.   That, of the sum of $2,500 realized by defendant upon the sale of the 5,000 shares pledged as security for the payment of the Intermountain Realty Company note an amount sufficient to satisfy said note, or $2,190, was applied by defendant thereon, leaving a surplus in its hands of $310. That the sum of $500 realized by defendant upon the sale of the 1,000 shares of stock pledged as security for the payment of plaintiff's personal note, together with the surplus of $310 remaining from the sale of the 5,000 shares pledged on the company note, was applied by defendant upon said personal note, leaving, after such application, due and unpaid thereon the sum of $900.   The court also found that plaintiff had no knowledge of the sale of his stock until some time during the month of October, 1917.

The conclusions of law were: That by the conduct and conversation of the defendant upon April 24, 1916, and by its subsequent conduct, the defendant waived the right to sell the Sugar Centrifugal Discharger Company stock without notice to plaintiff, and said sale by the defendant on January 19, 1917, was unlawful, and constituted a conversion of said stock by the defendant.   That since said sale was

made at the then full market value of said stock and no fluctuation in the value has been shown, and since the proceeds of said sale were fully credited upon the indebtedness for which' said stock was pledged as security, and as so credited have been insufficient to fully discharge the same, the plaintiff has not been damaged by reason of such conversion. That the defendant is entitled to judgment against the plaintiff upon its counterclaim for the balance due upon plaintiff's note of $1,500, to wit, $460, on the 23d day of November, 1917, together with interest thereon at the rate of eight per cent. per annum from said date to date of judgment, together with $150 attorney's fee.

From a judgment in accordance with the findings and conclusions plaintiff appeals.

The findings of fact and conclusions of law are based upon the undisputed statements of Mr. Musser, the plaintiff. He testified at the trial that he received a letter from the defendant dated April 18, 1916, which reads:

"We have made repeated demands on you for the payment of your note, dated July 11, 1914, amounting to $2,200, secured by 5,000 shares Sugar Centrifugal Discharger Company stock, but without result. This is to advise you that unless this note is paid on or before 11 o'clock a. m. April 24, 1916, we will proceed to sell the collateral and apply the proceeds on account of the note as provided therein."

Pursuant to that letter Mr. Musser, on the 24th day of April, 1916, called on Mr. Whitney, the cashier, at the bank. With reference to what occurred at that meeting appellant's abstract shows:

"Q. Now, will you state the conversation that took place between yourself and Mr. Whitney in reference to these two letters? A. I had the letters with me, and showed them to Mr. Whitney. He said, 'Yes; we sent them to you for our protection.' I called Mr. Whitney's attention to the fact that the stock which he had as security had very little market value up to that time. It had been a dividend-paying stock in 1914, but due to the war conditions, and other things, the company's revenues had not justified a dividend in 1915, and that I had evidence that the company would shortly begin to pay dividends, and I desired to handle the stock myself. The Court: That is, both blocks of it? A. Both blocks of it. As stated, I was in better position to find a purchaser for

that stock than he was, and, after listening to my explanations, he said, 'Mr. Musser, it is perfectly agreeable for you to go ahead and do this.' I explained to him that I thought the dividends would begin to be paid, or paid in the future, would more than keep up the interest, and to that he said it would be very satisfactory to go ahead and to do it, and 'I will let you dispose of the stock.' That was the substance of our conversation. Q. And did he agree with you on that occasion that he wouldn't sell the stock on that day? A. Yes, sir. Q. Was anything said about when the stock ultimately would be sold if you didn't make any payment on this note in the meantime? A. No; there was nothing said about selling stock. No definite date was—nothing was said by Mr. Whitney as to the date the collateral would be sold. Q. Now, thereafter, did you ever have any other conversation with Mr. Whitney, or any other officer of the bank, in reference to the paying of these notes or the selling of this collateral? A. No, sir. Q. Did you thereafter receive any notice that any sale was to be made of this collateral? A. No, sir. Q. Did you have any knowledge of any sale made? A. No, sir. Q. Did you give your consent that the stock be sold A. No, sir. Q. When, if ever, did you learn that this stock had been sold? A. Some time along in October, 1917, I learned it had been sold."

The $2,200 note, to secure the payment for which Mr. Musser's stock was pledged, was not signed by him, and that note provided that on default of payment the stock pledged might be sold either at public or private sale and without notice or demand. It is, however, contended and the district court held, that the defendant, by what occurred between Mr. Musser and Mr. Whitney heretofore referred to, had waived its right to sell the stock without notice or demand, and hence that when it did sell the same without such notice to or demand upon Mr. Musser the sale was unauthorized, and hence constituted a conversion of the stock by the defendant.

There is little, if any, disagreement among the courts that in case the pledgee is given the right to sell the pledge without demand and notice he can, nevertheless, waive that right, and that if the pledgee grants the pledgor further time to pay and extends the time for the sale of the pledge 1 indefinitely, he thereby waives his right to sell without further demand and notice to the pledgor, and in case he makes a sale of the pledge without further notice to

the pledgor, such sale is unauthorized and may constitute a conversion, depending upon whether the pledgor has parted with the pledged property or not. If he still has the pledged property under his control, so that he can return it to the pledgor upon demand being made therefor, the sale, although unauthorized, does nevertheless not constitute a conversion. If, however, he cannot return the pledge to the pledgor on demand it will constitute a conversion of the pledge, and .the pledgee is liable to the pledgor for the value of his pledged property after deducting the amount due to the pledgee on the debt secured by the pledge. Jones, Collateral Sec. & Pledges (3d Ed.) sections 571, 571a, 571b. An examination of the authorities will disclose that practically all of them support the rule stated by Mr. Jones.

Such, in substance, is also the rule adopted in *Toplitz* v. *Bauer,* 34 App. Div. 526, 55 N. Y. Supp. 29, affirmed in 161 N. Y. 325, 55 N. E. 1059, which case is relied on by the appellant. In that case it is held that while a consideration is necessary to support an extension of the time of payment as between the creditor and the principal debtor, and that a definite time must be agreed upon in order to release the surety from his obligation, yet the right to sell the pledge without demand and notice may be waived without such consideration, and if it is waived a sale is unauthorized without a subsequent demand and notice to the pledgor. It is, however, not held in that case, nor in any case so far as we are aware, that in case the right to sell the pledge without demand and notice is waived, but a sale is nevertheless made by the pledgee, for that reason the property of the pledgor is released from the lien. Indeed, the authorities are all to the contrary. In Jones, Collateral Sec. & Pledges (3d Ed.) section 573a, the law is stated thus:

"An unauthorized sale of the pledged property by the pledgee does not cause him to lose the lien of his pledge and render him liable for the value of the property if no damage is sustained by the pledgor."

By that is meant that in case the pledgee sells the property without authority he thereby becomes liable to account for

the full market value or actual value, as the case may be, of the property pledged, and in case the value of the property exceeds the debt the pledgee must repay to the pledgor the difference, while ordinarily if the sale is authorized the amount realized at the sale, in the absence of fraud, etc., is all that the pledgee is bound to account for to the pledgor. The authorities to that effect are numerous, and, as far as we are aware, without conflict. See *Whipple* v. *Dutton,* 175 Mass. 356, 56 N. E. 581, 78 Am. St. Rep. 501, where a large number of cases are cited; *Meyer Bros. Drug Co.* v. *Matthews,* 69 Ark. 483, 64 S. W. 264; *Lowe* v. *Ozmun,* 3 Cal. App. 387, 86 Pac. 729; *Fisher* v. *Jones,* 108 Ga. 490, 34 S. E. 172; *Fiege* v. *Burt,* 118 Mich. 243, 77 N. W. 928, 74 Am. St. Rep. 390; *Farrar* v. *Paine,* 173 Mass. 58, 53 N. E. 146; 1 Sedgwick, Damages (8th Ed.) section 80; 3 Sedgwick, Damages (8th Ed.) section 1069.

In *Farrar* v. *Paine,* supra, in passing upon the rights of the pledgee in case he has sold the pledge without legal authority, the court, in the course of the opinion, said:

"There are numberless decisions that where pledgees, mortgagees, or persons having a lien convert the pledged chattel by selling it in an unauthorized way, they are entitled to retain the amount of their lien."

In 3 Sedgwick, Damages, section 1069, it is said:

"Where a pledgee converts the pledged property he may reduce the damages in an action for conversion, by the amount of his debt. This is not recoupment, properly speaking; he has an interest in the property to the extent of the debt, and as against him the pledgor to that extent is not entitled to compensation."

A careful examination will disclose that practically all of the authorities are to the effect that under circumstances like those in the case at bar the pledgor may recover only the difference, if any, between the market value or the actual value of the pledge which has been wrongfully disposed of and the amount of the debt to secure the payment of which it was pledged. Indeed, the case of *Toplitz* v. *Bauer,* supra, is in harmony with all of the cases upon that question.

Appellant's counsel cite and rely on the case of *Hyams* v. *Bamberger,* 10 Utah, 3, 36 Pac. 202, and other cases, as hold-

ing a contrary doctrine. In all of the cases cited by counsel however, including the one from Utah, the pledgor had made a tender of the debt to the pledgee. Under such circumstances the law is well settled that a tender releases the pledged property. The pledgee may not refuse a legal tender of the amount due him and also retain a lien on the property. Such is not the case here. No tender or offer to pay the debt by Mr. Musser was ever made, and hence his property was not released from the lien.

Under the undisputed evidence in this case, however, Mr. Musser, if he had become personally obligated to pay the $2,200 note, would not have become released. There was neither a consideration for the alleged extension of time nor any definite time fixed, both of which were necessary in order to release him as surety had he been personally obligated. Spencer, Suretyship, section 225; Pingree, Suretyship & Guaranty, sections 119, 121.

In the case at bar, however, the evidence is undisputed that the extension of time was not only with the consent of Mr. Musser, but it was granted at his special instance and request. Under such circumstances he cannot successfully interpose the claim that he or his property was released. 1 Brandt, Suretyship & Guaranty, sections 376, 480; *Pence* v. *Gale,* 20 Minn. 257 (Gil. 231); *Brown* v. *Abbott,* 110 Ill. 162.

In *Brown* v. *Abbott* it is said:

"Where a party consents to the doing of an act, and which would not have been done but for his assent thereto, the person so assenting will not be permitted to make the doing of it a matter of personal advantage."

The case of *Edwards* v. *Bedford Chair Co.,* 41 Ohio St. 17, in so far as the evidence relates to the extension of time, is almost parallel with the case at bar. In passing upon the legal effect of the evidence in that case the court in the course of the opinion, said:

"Nothing was said as to the number of days, or months, asked for or granted; no time was named for delivering the drafts. The authorities are united in holding that unless the extension agreed upon is for a time certain, or so described that it can be rendered

certain, it does not discharge the surety. It does not take away the right of the holder to bring suit against the maker at pleasure."

It is also held that there must be a consideration for the extension in order to make it binding. We do not think that a single case can be found, and none is cited in counsel's brief, where it has been held that under the circumstances of this case the agreement with Mr. Whitney, the cashier, which is relied on by Mr. Musser, was sufficient to release him, even if the agreement had been made for the benefit of the debtor without the knowledge or consent of Mr. Musser. The agreement was entered into by. Mr. Musser himself, and was made at his request and solely for his benefit. Under such circumstances, even though it be held that the sale of the stock without notice to Mr. Musser had been waived, and that the sale thereof without further notice was unauthorized and constituted a conversion, yet, under all the authorities, that fact did not release the pledged stock, and, the only remedy Mr. Musser has is to recover the full market or actual value of the stock if it was sold for less than its market or actual value.

Mr. Musser is not injured in the eye of the law to any extent, since in case he is required to pay the $2,200 note he is entitled to full indemnity from his principal, the corporation. It is, however, suggested that, in view that in the case of *Coughran* v. *Bigelow*, 9 Utah, 260, 34 Pac. **6** 51, affirmed in 164 U. S. 301, 17 Sup. Ct. 117, 41 L. Ed. 442, it was held that the surety was discharged, therefore that case is a precedent for holding that Mr. Musser would have been released had he been personally liable, and hence his property is released. That case does not so hold, however. The decision in that case is based upon the well-recognized doctrine that in case a surety becomes obligated upon the performance of a certain condition, the non-performance of such condition constitutes a breach of his agreement, and hence he is released. In that case the surety agreed to indemnify the purchaser of certain lands in case the vendor should fail to convey the property purchased to the purchaser. The agreement of the surety was, however, based

upon the express condition that the purchaser should pay the purchase price to the vendor upon a specified date, time being made of the essence of the contract. The purchaser failed to make the payment as agreed, and the vendor, without the knowledge or consent of the surety, extended the time of payment, and received the purchase price after the date specified in the surety's agreement. It was accordingly held that the condition upon which the surety had become obligated had been disregarded without his consent, and hence he was released from his obligation. The principle upon which that decision rests is clearly stated in the headnote in 164 U. S., supra, to which we refer the reader.

The principle is also well stated in 1 Brandt, Suretyship and Guaranty, section 451, page 850, and in section 471, page 881. It is also illustrated in 32 Cyc. 174, 175. See, also, under subject of Principal and Surety, 16 Am. Digest, Decennial Ed. section 75, where the cases illustrating the principle are digested.

In view of the authorities, there is therefore no escape from the conclusion that under the undisputed facts of this case if Mr. Musser had been personally obligated, he would not have been released, and hence it follows that his stock which was pledged was not released, and the district court committed no error in so ruling.

It is also urged, however, that the district court erred in finding that the defendant sold the stock at its market value in the face of the fact that there is no evidence to sustain such a finding. While in our judgment the evidence respecting the value of the stock is such that the court     7 not only might well have found, and, according to the evidence as we view it, should have found, the value of the stock to be one dollar per share at the time it was sold, yet, in view that this is a law case, and that there is some substantial evidence in support of the court's finding, we are powerless to interfere with the finding as made.

In view of all of the facts and circumstances therefore, we feel constrained to hold that there is no reversible error in

the record, and that the judgment should be, and it accordingly is, affirmed with costs.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.